(No. 12168.—Decree affirmed.)

ARTHUR STRUVE, Defendant in Error, *vs.* GUSTAV A. TATGE *et al.* Plaintiffs in Error.

*Opinion filed October 21, 1918.*

1. FRAUD—*person charging actionable fraud must prove he has suffered injury.* One who charges actionable fraud in a real estate transaction must prove with a reasonable degree of certainty that he has suffered an injury, otherwise he is not entitled to relief.

2. NOTICE—*party having actual notice of conveyance is bound thereby.* One who before he purchases property has notice that another deed has been executed to another person is bound by such former deed, even though his own deed was recorded first.

3. DEEDS—*when a deed is properly delivered.* Where a deed is turned over to the notary who took the acknowledgment, upon the understanding that he is to hold the deed and the purchase money until the abstract of title has been made, examined and approved, when he is to deliver the deed to the grantee, a delivery by him to the grantee after such condition is complied with is good.

4. PLEADING—*when a general prayer for relief is sufficient.* A general prayer for relief is sufficient to support any decree warranted by the facts alleged in the bill and established by evidence.

5. PRINCIPAL AND AGENT—*when dual agency will not avoid real estate transaction.* Where the grantor knows the grantee is not purchasing the property for himself and is satisfied with the price received and the commission paid by him to the grantee, and the purchaser from the grantee is satisfied with the price paid by him, including his commission to such grantee, the fact that the latter received commissions both from his grantor and his grantee, neither of whom was misled, will not avoid the transaction.

6. INTEREST—*when purchaser of land is not chargeable with interest.* Where the purchaser of land deposits the purchase money with a notary, in accordance with the agreement of the parties, but the notary is prevented from delivering the purchase money because the grantor refused to complete the transaction and conveyed the property to a third person, the purchaser is not liable for interest.

WRIT OF ERROR to the Circuit Court of Will county; the Hon. ARTHUR W. DESELM, Judge, presiding.

ALBERT H. KRUSEMARK, and J. C. K. LINDHOUT, for plaintiffs in error.

HJALMAR REHN, (WILLIAM A. BOWLES, of counsel,) for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed by the defendant in error, Arthur Struve, in the circuit court of Will county, against plaintiffs in error, Gustav A. Tatge and Henry F. Bahlman, to remove a cloud from the title to certain real estate in the village of Beecher, in said county. Answers were filed, and Bahlman also filed a cross-bill. On the trial in the circuit court the issues were found in favor of defendant in error and Bahlman's cross-bill was dismissed for want of equity. The decree also found that defendant in error was the owner in fee simple of the premises, and that as part of the $5000 consideration he had assumed a mortgage indebtedness of $2000 thereon, and that he deposited with Frank Hunte $3000 to be used in paying off the other indebtedness, the balance above said other liens to be paid to Tatge; that there was a judgment of $2590.62 which was a lien against said property; that Bahlman was wrongfully in possession and had been for some time, and defendant in error was entitled to recover from Bahlman the rental value of said property at $40 a month from the date of recording defendant in error's deed until the delivery of the possession of the premises to him; that a deed from Tatge to Bahlman should be declared null and void, as having been executed with full knowledge of defendant in error's rights. From this decree this writ of error was sued out.

Defendant in error and plaintiffs in error all resided in the village of Beecher, in Will county, and had lived there for quite a long time previous to the transactions here in litigation. Tatge had been for some time running a garage. Struve was a banker and also engaged to some extent in the

real estate and insurance business. Hunte was in the general merchandise business and was also justice of the peace. Bahlman had previously been a farmer, as had Tatge, but for some time previous to these transactions he had engaged in the sale of automobiles in conjunction with Tatge. The property involved in this proceeding consists of a garage and the tract of land, seventy-five feet frontage, on which it stands, in the village of Beecher. Tatge had been the owner and conducted the garage on this property for some time previous to December 5, 1916. The evidence tends to show that he was in debt to various people at that time, among others to Bahlman; that he had talked with Struve and with Hunte with reference to the sale of the garage property; that he had put the price at from $8000 to $12,-000 and then had come down to $6000, but finally on December 5, 1916, after a talk with Struve, gave him an option for the sale of the garage at $5000, signing on that date a paper in which was stated briefly the description of the property and a list of the personal property in the garage, and agreeing to furnish an abstract from the former owner, T. L. Miller, down to December 5, 1916, showing clear title, and agreeing further to pay to Struve a commission of $150 in case a sale was made, and stating that the option was to expire December 10, 1916. The evidence on behalf of Struve, as testified to by himself and Hunte, is to the effect that this option was given early in the afternoon of December 5, and that later in the day Struve telephoned Tatge that he was ready to purchase the property at the terms stated and wanted a conveyance made to him. They also testified that Tatge and Struve went to Hunte's store to ask him to draw the deed; that from there the three went to the garage, and an attempt was made to get the deed to the garage in order to find the description of the property; that a deed was found but afterward discovered to be the wrong one, and that afterward all three, with Tatge's son, went to Tatge's house to find the right deed. The son

was a young married man twenty-five years of age and assisted his father in running and managing the garage. When they reached Tatge's residence the right deed was found, and Struve and Hunte testified that Hunte drew a warranty deed conveying the property from Tatge and his wife to Struve subject to a $2000 mortgage, the description being taken from the deed brought out by Tatge; that the description was compared with the old deed and found correct, and that then Tatge signed it and called his wife from an adjoining room to sign it also; that at Struve's suggestion Hunte asked her if she understood what she was signing, stating that it was a deed to the garage, and that she said she understood it, and that she then signed and acknowledged it before Hunte, who was a notary public. The testimony of Tatge and wife and his son was all to the effect that they understood the paper signed at the house in the evening was merely an option. There were also some younger members of the Tatge family present part of the time and they testified somewhat to the same effect as the elder Tatge. Struve and Hunte testified that when the deed was acknowledged it was agreed that before the transaction was closed Struve should have an abstract made from the date of a former owner's title, and that the deed be held in escrow by Hunte until the abstract was completed and Struve could have it examined; that in the meantime Struve would deposit with Hunte enough to pay off the balance of the purchase price over and above the $2000 mortgage; that this was agreed to, and Hunte took the deed away with him to hold for that purpose. Tatge and the son and the latter's wife all denied that such statements were made, and insist that the only talk that was had at the time was in regard to executing an option, and that when he was leaving the house with what they thought was the option, Struve said to keep quiet about this, as the sale was not made yet. Struve denies making any such statement. It should be said further in connection with the execution

of the paper on the evening of December 5 at Tatge's house, that Tatge, while conceding that he could read English very poorly, claimed that he did not read the deed because his glasses were broken and that the deed was not read aloud to him, and it is not claimed that the deed was read to Mrs. Tatge after she came, but it is claimed that she understood it was a deed at the time she executed it. There is no controversy that the paper was a deed and was thus executed, as testified to by Struve and Hunte, the only question in controversy being whether the Tatges understood it was an option rather than a warranty deed. Bahlman the next day heard something about the transaction, and as the elder Tatge owed him a debt and he was afraid he might lose it if the garage were sold, he sought out Struve and asked him if he had bought the property, and Struve testified that he told him he had bought it but did not want to tell him the consideration or who the intended purchaser was. The testimony all goes to show that it was understood that Struve was not buying the property for himself to manage and control but that he intended to dispose of it to someone else. This conversation between Bahlman and Struve took place in the saloon of Bahlman's brother, in Beecher. The bar-tender overheard a portion of this conversation and his testimony at the trial tends strongly to corroborate that of Struve. Bahlman denies that Struve at that time told him he had bought the property, his testimony tending to show that he understood Struve had an option to purchase the property but had not actually purchased it. There was talk at that time between Struve and Bahlman as to Tatge owing Bahlman and that Bahlman wanted his claim taken care of and was going to see Tatge about it. Struve told Bahlman to let him know whether he wanted him to take care of it, and later Bahlman told him that Mrs. Tatge had agreed to pay his claim. Bahlman admitted, upon cross-examination, that he had understood from various sources that Struve had bought the property;

that he had talked with Hunte about it. Hunte testified he told Bahlman that Struve had purchased the property. Bahlman in effect denies Hunte's testimony, claiming he understood that Struve only had an option for the purchase of the property. Bahlman admitted that he stated falsely to Struve, during their conversation on December 6, the amount of his claim against Tatge, and that he told Struve it was $500, when, as a matter of fact, Tatge owed him approximately $2500. A day or two after this, Bahlman, whose claims were represented by judgment notes, entered them in judgment and thereafter negotiated with Tatge as to the purchase of the property, on the ground, as he claimed, that he could thus protect himself better in collecting his judgments. He claimed that he understood from Tatge that he had only given an option to Struve, and that they went to another town to consult with certain persons as to the effect of an option, and were told by them that when the time of the option expired it was perfectly safe for Tatge to deed the property to someone else; that a notice was therefore prepared and served upon both Struve and Hunte by the Tatges, stating that the time of the option had expired and they did not wish it to run longer, and that then Tatge and his wife executed a warranty deed to Bahlman. Before this was done, Bahlman testified he went to the county seat of Will county and searched the records to see if any paper had been filed by Struve, and as he found none he completed the purchase of the garage from Tatge, agreeing to pay $5000 for it. It appeared that about the time of the execution of this second deed Hunte had obtained the completed abstract and sent word to Tatge and Struve that he was ready now to close up the transaction; that Struve had previously given him two checks, amounting to $3500, to pay the balance over and above the $2000 mortgage which Struve had agreed to assume; that Tatge refused to come near him to settle up the transaction but that Struve came, and he shortly thereafter gave him the

deed from Mr. and Mrs. Tatge to the premises. However, before this transaction was closed up Bahlman had recorded his deed, and the deed to Struve was not recorded until several days after.

It will thus be seen that the evidence was very sharply conflicting on the material questions involved on this hearing. Counsel for plaintiffs in error claim, and Bahlman so alleged in his cross-bill, that the deed from Tatge and wife to Struve was obtained through fraud, and should therefore be set aside as null and void against Tatge or the later purchaser, Bahlman. The general rule is that to constitute actionable fraud it must be shown, among other things, that the person who is alleging fraud has thereby suffered an injury, and this, as well as all the other essentials of fraud, must be proved to a reasonable degree of certainty. (20 Cyc. 12, and cases cited; *Merwin* v. *Arbuckle,* 81 Ill. 501; 2 Pomeroy's Eq. Jur.—3d ed.—sec. 898.) We can not see on this record how Tatge was injured by the transaction. The deed to Struve had a consideration of $5000, and that is the consideration in the deed to Bahlman, so we think it is clear without controversy on this record that Tatge is not entitled to any relief as against Struve.

The question remains whether Bahlman is entitled to relief, and that turns on the question whether he had such notice as required by law to put him on inquiry with reference to the transaction between Tatge and Struve before he purchased the property and took his deed. If he knew of the deed executed by Tatge and his wife to Struve, or had such notice as upon reasonable inquiry would cause a prudent man, in the exercise of ordinary diligence, to ascertain whether such deed had been executed, then he is bound by the first conveyance, regardless of the fact that his deed was recorded first. (*Rupert* v. *Mark,* 15 Ill. 540; *Morrison* v. *Kelly,* 22 id. 609; *Dickenson* v. *Breeden,* 30 id. 279.) The decree in effect holds that Bahlman knew at the time that Tatge had previously sold the property to Struve. This

being the situation, the conveyance from Tatge to Bahlman would be fraudulent as against the original conveyance to Struve. *Ludlow* v. *Gill,* 1 Am. Dec. (Vt.) 694, and note; 2 Pomeroy's Eq. Jur. (3d ed.) sec. 660.

The briefs argue at some length the consistency or inconsistency of the testimony of the various witnesses. The weight of the testimony of these witnesses was for the trial court. The chancellor saw and heard them and was in much better position to judge whether their testimony was true than we are from the record, alone. (*Ackman* v. *Potter,* 239 Ill. 578, and authorities there cited.) We cannot say that the testimony did not justify the chancellor, on this record, in entering the decree against plaintiffs in error. Indeed, we think he was amply justified, on this record, in so doing.

Counsel for plaintiffs in error also argue that there was no delivery of the deed from Tatge to Struve. Whether a deed is delivered depends upon the intention of the grantor, and this intention may be shown by words or acts, or by both, together with the attending circumstances. (*Hill* v. *Kreiger,* 250 Ill. 408.) The evidence fully justifies the conclusion that the deed was given to Hunte to be held in escrow until the completion of the abstract, and that it was to be turned over to Struve as soon as the abstract was brought down to date and found satisfactory to Struve, provided he deposited the balance of the purchase money with Hunte, to be used in accordance with the understanding when the deed was executed. The evidence justified the chancellor in finding that this purchase money was deposited with Hunte and that therefore he was authorized to turn over the deed and abstract to Struve. Where a deed is acknowledged before a proper officer and it is left with him in escrow, to be turned over, under certain conditions, when those conditions are fulfilled, the delivery by the officer will be a delivery to the grantee. *Fletcher* v. *Shepherd,* 174 Ill. 262; *Hewitt* v. *Clark,* 91 id. 605.

Counsel for plaintiffs in error also argue that it was error not to permit them, on cross-examination, to show the relation of Struve to the prospective purchaser, Wehmhoefer. The question complained of was not at first answered by this witness on cross-examination but was answered later fully, and therefore, even though the trial court wrongfully refused to allow the question to be answered, plaintiffs in error were in no way injured by the first refusal.

It is also argued that no relief should be granted here because the relief was not consistent with the theory and purpose of the original bill as filed and supported by the allegations therein. There is a general prayer for relief in the bill, which is sufficient to cover all that the decree found. A general prayer for relief is sufficient to support any decree warranted by the facts alleged in the bill and established by the evidence. (*Rankin* v. *Rankin,* 216 Ill. 132.) The bill alleged the definite facts which justified the decree. The fact that Hunte had in his hands $3500 in checks instead of $3000,—the balance due, which was to be used in paying off Tatge's indebtedness,—could not in any way be prejudicial to plaintiffs in error.

The complaint is also made by counsel for plaintiffs in error that Struve, from the testimony, understood he was to receive a double commission,—$150 from Tatge and also a commission of $150 from the buyer, Wehmhoefer. We think the evidence clearly shows that at the time of the sale from Tatge to Struve it was understood that Struve was not purchasing the property to run the garage for himself. The wording of the option contract indicates that fact. The evidence also shows that neither Wehmhoefer nor Tatge was in any way injured by the agreement of either to pay the commission to Struve. They were not deceived in any way or misled as to the payment of either of these commissions. Each was satisfied with the price and the amount he received or paid. There is no proof that Tatge knew of Wehmhoefer's proposed purchase or what Wehmhoefer was·

to pay for the property, and Wehmhoefer was to get his deed from Struve and not from Tatge. A dual agency in itself is not unlawful, and we can see no reason, when two of the parties are each willing to treat the third as a principal and not as the agent, and when both are satisfied with the price and with paying an additional amount in the nature of commission, why such payment will invalidate the sale or show there was fraud in its execution when neither party was misled. (*Adams* v. *Larson,* 279 Ill. 268, and authorities cited.) There is nothing shown in this record as to the payment of commissions by Wehmhoefer or by Tatge that in any way caused any misunderstanding or was used as a matter of misrepresentation to either of the plaintiffs in error.

It seems also to be argued by counsel for plaintiffs in error that the decree is erroneous because it does not provide that Struve pay five per cent interest on all the moneys in the hands of Hunte, with whom the deed was left in escrow. We do not understand the merit of this argument. Struve had the money always at hand ready to pay over the balance of the purchase price from the time of the delivery of the deed to Hunte, and he was prevented from paying over this money by the acts of Tatge in selling the property to Bahlman. The controversy arose out of the wrongful acts of Tatge and Bahlman. Had it not been for this the checks in the hands of Hunte would have been cashed at once and the money turned over to the proper parties in accordance with the terms of the agreement made at the time the deed from Tatge was executed and delivered to Hunte.

Neither do we think there is any merit in the contention of counsel for plaintiffs in error that the decree is erroneous in providing that Bahlman pay Struve $40 per month as the rental value of the premises during the time Bahlman remained in possession. The evidence clearly showed that $40 a month rent was not too high. Bahl-

man himself testified that he was receiving a rent of approximately $50 per month for the premises at the time of this hearing.

It appears from the record before us, also, that counsel for plaintiffs in error, at the conclusion of the hearing of the evidence, asked leave to file amended answers and cross-bills. He was denied this leave, and it is now urged that the court erred in thus denying his motion. The question of allowing amendments is very largely in the sound discretion of the trial court. No meritorious reason is urged why plaintiffs in error were injured in any way by the refusal to permit them to file amended answers and cross-bills. We do not think the court erred in so refusing.

We find no error in the record. The decree of the circuit court will therefore be affirmed.     *Decree affirmed.*