(No. 20510.—)
RUDOLPH WRLLA, Appellee, *vs.* ANTONIE WRLLA,
Appellant.

*Opinion filed December 18, 1930.*

STANLEY T. RYWNIAK, for appellant.

ISADOR BECKER, and EDWARD MCTIERNAN, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellee filed a bill in the superior court of Cook county against appellant, his wife, charging that she had induced him to put money into the purchase of property with the understanding that he was to have a one-third interest therein but that she fraudulently and without his knowledge took title to the entire property in herself. The bill sets out that just prior to their marriage appellant had contracted to trade for property known as the South Hamlin avenue property, in the city of Chicago; that on March 12, 1926, just subsequent to the marriage of the parties to this suit, they, with one Charles Marek, with whom the exchange of property was being made, appeared at the office of a real estate broker and completed the transaction; that appellant did not have sufficient funds to complete the deal and that

appellee contributed the sum of $2160 for a one-third interest in the property, with the understanding and agreement that he was to have one-third thereof. The bill charges that while appellant informed appellee that the title had been so taken, as a matter of fact she had taken the entire title in herself, and that for more than a year thereafter he did not discover that her statement in that connection was false and untrue, and that, believing himself to be the owner of an undivided one-third of the real estate, he expended over $300 in improvements on the place and contributed his labor to such improvements. He alleges that he discovered, at the time a divorce proceeding was filed against him by appellant, that the property had been taken in her name and he demanded his interest therein, which she refused to convey. The bill prays that a resulting trust be declared and that appellant be required to account for the income and prayed for partition of the premises. The bill also prayed that parts or shares of the property belonging to him and to appellant be settled and ascertained by the court and that a fair division be made; that commissioners be appointed to make such division, or sell the property if not subject to such division, and that the proceeds thereof be divided according to the rights of the parties therein, and for other and further relief. The decree does not expressly find a trust existed but finds that appellee put $2160 into the purchase of the premises with the understanding that he was to have a one-third interest therein, and that appellant, in violation of her agreement, took title in her own name. The decree finds that the sum of $2160 paid by appellee fairly represents the value of an undivided one-third interest in the real estate and that appellee owns an undivided one-third interest in the property and directs appellant to make a deed to him within five days, or in case of her refusal that the master in chancery execute such deed. Appellant brings the cause here for review and bases her argument principally on the claim that a re-

sulting trust could not have arisen under the facts in this case and that the facts showed that the money was a gift in the nature of a wedding present to appellant.

The evidence shows that these parties met about four months prior to their marriage, which occurred on February 26, 1926; that appellant had advertised for a partner to go into business with her; that appellee told her he had $3000 and that they agreed they would be married; that at that time she had made the contract for the exchange of property which she owned for the South Hamlin avenue property, and that when it came time to close the deal she needed the sum of $2160 to complete the transaction. Appellee testified that appellant told him he should have one-third of the property if he put $2160 into it; that he made a check and gave it to her, and that at the time they met to complete the transaction he asked the broker to read the deed, but that he did not do so. He testified that when he asked that the paper be read appellant said: "What do you want the paper read for? I must hurry home; I think it is enough; you got one-third of the property;" that he said, "If that is so I am satisfied." On cross-examination he stated that he wanted to know "how my money is insured in this property," evidently meaning that he asked the broker to read and translate the deed to him so that he would know what he was getting for his money. He also stated that if he thought there was a mistake in the paper he would have taken his check back again, but that "she told me, 'I will give you one-third of the property,' and I gave her the money." It is evident from his testimony that he thought he was getting a one-third interest in the property at the time. He testified that later, when he found out the deed did not show his interest in the property, he asked her about his money, and she said, "I give you one-third of the property for the money." It is evident from his testimony that he was inquiring why he did not have the title to one-third of the property. These parties are

Bohemians, and it is evident from the record that appellee does not speak English fluently or readily understand it.

Charles Marek, from whom the property was purchased, testified that at the time the deal was closed he received from appellee his check for $2160 to apply on payment of the difference in value of the equities in the lots exchanged, and that appellee then said, "Here is the check for the property." Marek also testified that appellee asked the broker to read the paper; that the broker read it and was requested to read it again but was stopped from doing so by appellant, who said, "Don't be afraid; I did not cheat you." This witness also testified that he on one occasion thereafter heard appellant say that she gave him one-third of the property; that "she put in him one-third of the property right away."

Mary Marek, wife of Charles Marek, testified that she was present at the time the deeds were transferred, and that when appellee asked the broker to read the papers appellant then said, "Never mind; I won't cheat you for that one-third;" that she was in a hurry to go home, and that the broker did not read the papers.

May Chybych testified that she heard appellant tell appellee on one occasion that he had one-third in the property.

The testimony of Emil J. Mix and Harry Platt, who were dealers in real estate, was that the property was then worth about $16,000 and was subject to an $8000 mortgage, giving an equity of not to exceed $8000. The chancellor found that the sum of $2160 was a fair consideration for an undivided one-third of this equity.

Appellant testified she was acquainted with appellee about six months before they were married; that she advertised for a lady or man partner to start business; that she had a store room that had been vacant for two months; that appellee came to see her and she told him she wanted to open a store, and he said he knew nothing about business but later sent her a letter telling her he would marry her

and they would start business; that she told him she would not start business with him because he did not know anything about business; that a few days later she told him that if she could get a larger flat she would marry him; that he wanted to marry her because he had a daughter that had heart trouble, who needed a mother; that there was nothing said about money at the time; that between that time and February 19 appellee visited her about three times a week; that they were married on February 26, after she had made the contract to trade for the property on South Hamlin avenue. She testified that appellee promised her a coat and a radio and then told her he would give her money instead, and that he gave her the check involved in this case and told her that that was her wedding present; that he did not say anything about a one-third interest in the property and that she did not tell him she would give him a one-third interest in the property. She testified that she conducted a store on the property at South Hamlin avenue and that she managed it herself; that on one occasion, after they were married, she asked him to give her some money for living, and he said, "I gave you enough when we were married; what more do you want?" and that she did not know he claimed any interest in the property until after she started divorce proceedings against him.

Anna J. Rehor, daughter of appellant, testified that appellee told her shortly after their marriage, "I gave your mother a nice wedding present, so I expect you to be good to my daughter."

Joseph Zak and James J. Martinek testified that they had conversations with appellee concerning storm windows on the premises, and that he told them not to ask him—that he was not the landlord.

Ralph J. Soucek testified that he wrote the contract for the transfer of the property between appellant and Marek and was present at the time the deeds were passed; that the equity in the Marek property was more valuable than

property of appellant and that the latter was required to pay approximately $3000 difference; that appellee there gave his check for $2160, and that he did not hear any demand made by him on appellant for any interest in the property. He testified that the deeds were read in the presence of both parties and the Mareks, in the English language and translated into the Bohemian language; that appellee said nothing, and that he did not hear appellant say that appellee was to get one-third of the property. This constituted the evidence in the case.

The examination of the testimony of appellant and appellee evidences that the former was more familiar with the English language and more accustomed to business transactions than the latter. It is also apparent from that testimony that the relation of these parties from the outset, up to and including the transfer of these deeds, and even as to their marriage, was one more of business than sentiment and does not tend to show a gift of this check by appellee. The chancellor heard and saw the witnesses and we are not disposed to disturb his findings of fact.

Much of the appellant's brief is devoted to argument concerning the law of resulting trust. However, the bill charged facts which are supported by the evidence as found by the decree, and the prayer of the bill was for a determination of the rights of the parties and for other and further relief. Where the bill contains a prayer for such other and further relief as to the court shall seem meet it must be regarded as sufficient to support any decree warranted by the facts alleged in the bill. (*Struve* v. *Tatge,* 285 Ill. 103; *Rankin* v. *Rankin,* 216 id. 132; *Walker* v. *Converse,* 148 id. 622.) Where title is obtained by fraudulent means the law creates a constructive trust and such constructive trustee will not be given the benefit of the Statute of Frauds. (*Lowenberg* v. *Booth,* 330 Ill. 548; *Duncan* v. *Dazey,* 318 id. 500.) The proof of facts showing a constructive trust may be made by parol and is not within the provi-

sion of the Statute of Frauds requiring the trust created to be in writing. (*Brooks* v. *Gretz,* 313 Ill. 290.) The charges in the bill are supported by the evidence.

We are of opinion that the chancellor did not err in the decree entered, and it will be affirmed.

*Decree affirmed.*