(No. 31034.—

SARAH SAWYER, Appellee, *vs.* MICHAEL J. CREIGHTON *et al.*, Appellants.

*Opinion filed May 19, 1949.*

Zwanzig, Thompson & Lanuti, of Ottawa, for appellants.

Charles R. Barrett, of Chicago, and T. M. Anderson, of Earlville, for appellee.

Mr. Justice Simpson delivered the opinion of the court:

Appellants, Michael J. Creighton and Catherine Creighton his wife, claiming a freehold in the real estate involved herein but which was denied them by decree of the circuit court of La Salle County, appeal to us for reversal of that decree.

Appellee, Sarah Sawyer, a widow 62 years old, is an aunt of appellant Michael J. Creighton, an attorney at law residing at Oak Park and having an office in Chicago. Her husband died July 29, 1946, leaving her the surviving joint tenant of the premises which had been conveyed to them in joint tenancy. October 19, 1946, through deed dated the 5th of that month, appellee conveyed the premises to Joseph M. Geary as a mere nominee who then at her request conveyed them to appellee and the appellants in joint tenancy. There was no consideration paid for either deed. Geary was made a defendant to the suit but is not interested in the outcome.

May 14, 1947, appellee filed suit to have both deeds set aside and title reinvested in her. She charged that Michael J. Creighton represented to her that he needed a written instrument so that he could show some interest in

her lands in order to properly resist the extension of a hard road across them and that she supposed the deed signed by her was such instrument and not a deed. She charged in another count that appellants did not acquire through the deed any beneficial interest in the premises; that she has at all times since the deed been in possession of the premises and enjoyed the income therefrom and that appellants are holding title to said premises under said deed as trustees for her use and benefit, and that she demanded a reconveyance of the premises to her which was refused. She prayed that the court decree a resulting trust in her favor in the premises and that appellants be decreed to convey all right, title and interest therein to her, or that said deeds may be set aside and held null and void. She also prayed for such other and further relief as equity may require and to the court may seem meet.

Appellants deny the material allegations of the complaint and assert title in themselves with appellee as joint tenants.

The case was heard before the chancellor, who on October 14, 1948, entered a decree setting the deeds aside, declaring them null and void, and ordering Michael J. Creighton to deliver to appellee the abstract of title to the premises within thirty days and to pay the costs.

Appellee has two brothers, several nieces and two nephews. She and her husband resided on the premises in La Salle County at the time of his death and she has continued to reside there. Michael seemed to be a favorite of appellee's and, with his wife, visited her frequently. They were estranged for a period of about three years, but in 1946 the friendship was renewed and he resumed frequent visits with her. When her husband became ill appellee requested appellants to remain with her, which they did for several days. Soon after they returned home they were called back because of Mr. Sawyer's turn for the worse.

They then remained a few days until after his death and funeral. Michael accompanied appellee when she bought some clothing for the wake and went with her to the bank at Ottawa where she arranged for the release of two or three hundred dollars from a joint bank account. He went with her to the funeral home and assisted in selecting a casket and advised her relative to the location of a burial lot.

A few days after her husband's death appellee told Michael she was rather lonesome and very much upset and needed someone to help run the farm and asked him if he would be good enough to assist her in that connection, to which he agreed. Later, through his assistance, the joint bank account of appellee and her husband was released. He also arranged for release of the safe-deposit box after he had her sign a form No. 600 for that purpose. He accompanied her to the lockbox when an inventory of its contents was made, but took no part in making the inventory. When Michael would leave her home she was solicitous concerning his return. He ran an advertisement in a Chicago paper for a farm hand and thereafter employed a man to work for her. He always paid the man but was reimbursed by her. She said she gave Michael a check every time he asked for one and never questioned the amount nor the purpose for which it was given. He procured the necessary forms from the Secretary of State and had them made out for the transfer of title to her of her husband's automobile. He often purchased groceries for her and would take beer to her from Chicago and she would reimburse him for payment thereof.

When plumbing was installed in the Sawyer home Michael arranged through a friend in Chicago that she receive a 35 per cent discount on the retail cost of the fixtures. At one time she had a leg infection and he drove her from the farm to the hospital. After she was released from the hospital she went to his home and stayed for

several days. She frequently visited at his home when she was in Chicago. She left from his residence on a voyage to Ireland, requesting him to drive to the farm occasionally to see how her husband was getting along, and he drove out there almost every week end during her absence. He assisted her in filling out necessary forms required by the immigration and naturalization departments prior to her being naturalized.

The premises consist of farm and timber lands worth approximately $50,000. Michael and his wife testified in substance that on September 14, 1946, at the Sawyer home appellee stated to them that she feared some of the relatives might cause trouble; that whenever she needed a friend she could always depend on them and that if anything were to happen to her she would want them to have the property and that it was her desire to put the title in joint tenancy in her name and theirs the same as she and her husband had held the title, and that she requested Michael to so prepare the deeds. She denied having made the statements attributed to her and says that Michael told her it would be necessary that she sign some paper for him to use in opposing the construction of a hard road across the premises, which was under consideration. Appellee says that she did not understand that she was signing a deed but thought it was a paper having to with the hard road. On the other hand, it is insisted that she understood the nature of the instrument and executed her deed knowingly and intentionally.

It is contended by appellee but denied by appellants, that a confidential or fiduciary relationship existed between her and Michael. She says he acted as her attorney and was paid as such. He says he acted only as a friend and relative, and gratuitously.

Appellants argue that because title to the same premises was held in joint tenancy by appellee and her husband and because she acquired full title to the same upon his death,

she fully understood the nature and consequences of the joint-tenancy deed here involved. The nominee to whom appellee conveyed the title just prior to his transferring it to the three in joint tenancy and the notary who took the acknowledgments testified concerning the execution of the instruments and their testimony indicated that no fraud was operating or apparent at that time. It is true she knew that upon her husband's death the premises stood in her name and his as joint tenants and that she then acquired the full title, but it does not appear that appellant explained to her the number of contingencies which might occur to affect the title held by the three in joint tenancy nor was she advised as to the meaning of a deed of this nature.

Appellee made a number of statements to the effect that she desired her nephew Michael and his wife to have the property if anything happened to her. It was testified by Frank Lyduc that she told him Michael and his wife were good to her and if anything should ever happen to her she would have things arranged so that the farm would be theirs. Witness Margaret Looney testified that appellee said she thought a great deal of Mr. and Mrs. Creighton and that she was going to see to it that if there was anything she had she would leave it to them. Many of her statements indicated that she had a fondness for Michael and his wife and that she intended to leave her farm to them upon her death. We find nothing, however, in the record, aside from the joint-tenancy instrument itself and her statements concerning it, which would in any manner indicate her intention to part with any portion of the farm during her life. On the other hand the record does not disclose that she understood her right, title and interest in the farm would remain unaffected during her life and that Michael and his wife would have no right, title or interest therein until her death. Appellants say that after the deed was executed she told them they were entitled to a portion

of the rents as they owned part of the title, but she denied this and the lower court evidently believed her.

There is no doubt in our minds but that a confidential or fiduciary relationship existed between appellee and her nephew Michael J. Creighton. It is true that blood relationship alone does not constitute one a fiduciary. (*Finney* v. *White*, 389 Ill. 374; *Stewart* v. *Sunagel*, 394 Ill. 209.) But the term "fiduciary relationship" is a very broad one and such relationship exists in all cases in which influence has been acquired and abused or in which confidence has been reposed and betrayed. The origin of the confidence and the source of the influence are immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one trusts in and relies upon another. *Lipscomb* v. *Allen*, 298 Ill. 537; *Krieg* v. *Felgner*, 400 Ill. 113; *Dombrow* v. *Dombrow*, 401 Ill. 324.

When existence of a fiduciary relationship has been established, the law presumes that any transaction between the parties by which the dominant party has profited is fraudulent, and while the presumption is not conclusive but may be rebutted by clear and convincing proof that the dominant party has exercised good faith and has not betrayed the confidence reposed in him, the burden rests upon the dominant party to produce such evidence and if the burden is not discharged, the transaction will be set aside in equity. *McCord* v. *Roberts*, 334 Ill. 233; *Clark* v. *Clark*, 398 Ill. 592; *Dombrow* v. *Dombrow*, 401 Ill. 324.

Michael knew that under the joint-tenancy deed the appellee would be deprived of two thirds of her property for the remainder of her life; that if he and she should die before his wife, the latter would possess the whole; that through a voluntary or a forced sale third persons could be brought into title and possession of the premises; that the most appellee could demand was one third of the income whereas she needed the whole of it. Michael being

an attorney knew the various situations that could arise concerning this property under the joint-tenancy arrangement. He made no explanation to her whatever concerning the rights of parties who held title in joint tenancy. He says the reason for not explaining this to her was that she and her husband held title to the same property in joint tenancy and that she acquired the whole title upon his death. We cannot accept that reason as sufficient. His failure to advise or inform her as to these matters, under the circumstances of this case, was an imposition upon her and amounts to taking advantage of one who reposed implicit confidence in him. There was no adequate consideration to support the transfers and no gift was intended by the joint-tenancy deed nor do appellants claim title as a gift. Michael was asked if she intended a gift of the farm and answered, "She told us that in the event anything happened to her that she wanted us to have the farm." The record is clear that she intended only that title pass to appellants upon her death.

Appellants argue that the complaint is not sufficient to support the decree. We have examined the amended complaint and the amendments thereto and while they are based largely upon the position that appellee thought she was signing an authorization to Michael that might be used by him in opposing the proposed hard road, they nevertheless charge that a fiduciary relationship existed between appellee and Michael and allege that appellee never intended to create a joint tenancy in the premises; that appellants acquired no beneficial interest therein, and that she had been in possession at all times since the deed, enjoying the income therefrom. She prays that the deeds be set aside or that a resulting trust be decreed in her favor, and also prays for such other and further relief as equity may require and to the court may seem meet. We believe the allegations are sufficient to support the decree. See *Wrlla* v. *Wrlla,* 342 Ill. 31; *Struve* v. *Tatge,* 285 Ill. 103.

Michael J. Creighton, by reason of the relationship between him and appellee, owed her a duty to explain fully all the consequences and contingencies which might or could result by reason of the joint-tenancy deed. He failed to perform that duty but took advantage of appellee and should not be permitted to retain the benefits received. (*Krieg* v. *Felgner,* 400 Ill. 113; *Fisher* v. *Burgiel,* 382 Ill. 42.) Appellant Catherine Creighton stands upon no better footing than her husband. *Schrader* v. *Schrader,* 298 Ill. 469.

The circuit court decided the case correctly and its decree will be affirmed.

*Decree affirmed.*