MARJORIE L. PERRY, Plaintiff, *v.* JACK LAVERNE ELMORE, SR., *et al.*, Defendants.—(CARL J. ELMORE, Plaintiff-Appellee, *v.* MARJORIE L. PERRY, Defendant-Appellant.)

Third District   No. 79-372

Opinion filed August 29, 1980.

Earle V. Ryan, of Toluca, and Emmanuel F. Guyon, of Streator, for appellant.

Eric B. Deobler, of Peter F. Ferracuti & Associates, of Ottawa, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

This litigation began in June of 1977 with a partition suit filed by Marjorie Perry in which she sought to partition four tracts of residential property located in Streator, Illinois. She alleged that fee simple title was originally vested solely in Jack LaVerne Elmore, Sr.; that in 1973 he conveyed the property to himself and his brother Carl J. Elmore, as joint tenants; and that on May 26, 1976, Carl Elmore conveyed his undivided one-half interest to his sister, plaintiff Marjorie Perry, reserving a life estate in the income to himself. The suit named as defendants Jack LaVerne Elmore, Sr., Carl J. Elmore, and two tenants who occupied residences upon the property to be partitioned.

In December 1977, Carl J. Elmore commenced an action to set aside the deed from himself to Marjorie Perry, alleging that Marjorie had caused him to execute the deed for fraudulent purposes, that he was then 67 years old and nearly blind, that he had relied upon their brother-sister relationship in executing the deed, and that there was never any consideration given for the deed. Additional allegations of the complaint relating to a power of attorney and certain bank funds are not involved in this appeal and will, therefore, be omitted from consideration.

The partition suit and the suit to set aside the deed were consolidated for trial, and the cause to set aside the deed was heard first. Marjorie was called to testify as an adverse party pursuant to section 60 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 60). She testified that after the death of their mother in 1972, she would upon occasion look after her brother Carl who had previously lived with their mother and who now tried to live alone in Streator. She said that Carl would sometimes "fall apart," that he was very lonely, that he has had a "mental disability" all his life, that he was confused, and that when he became ill, he would come

stay with her. According to Marjorie, when Carl asked her to help him handle his business affairs and to take over his property, they worked out a plan whereby Carl would live "rent free" in a trailer to be placed beside her farm home. They also agreed to sell the houses he owned and to invest the proceeds so he could live on the interest. She said title to the trailer was put in her name at Carl's request, and she admitted that during the summer after the deed was signed, she sent him to the Zeller Mental Health Clinic. She testified that the only consideration she gave for the deed was "love and affection," and she agreed that his eyes were bad in May of 1976. She said that the deed was read to him at the bank where he signed it, but later she said that it was handed to him to read himself, that she explained it to him, and that he had read it at home.

An ophthalmologist, Dr. Sidrys, testified that he examined Carl on November 5, 1976, at which time he was practically blind from advanced bilateral cataracts. He could not read normal print, and in the opinion of the doctor, due to the progressive course of cataracts, Carl would not have been able to read typewritten print five months earlier. Dr. Sidrys later removed the cataracts from both eyes.

Carl testified in his own behalf, stating he was then 69 years old and had seven years of schooling. He said that after his mother died, he was confused and could not see very well. He testified that Marjorie took him to the bank, told him to sign some papers, showed him where to sign, but never told him what he was signing.

The only witness called on behalf of defendant Marjorie Perry was James Ghiglieri, president of the bank in Toluca where the deed was executed. Ghiglieri had notarized the deed, but he stated that he could not recall any conversation in connection with the transaction. He testified that, as a matter of policy, he always made sure the person signing knew what he was signing.

Before proceeding to hear evidence relating to the partition suit, the trial court ruled that the deed was void and should be set aside. In a written opinion the court found that a fiduciary relationship existed between Marjorie and Carl; that Marjorie had a special duty to deal fairly with Carl since he was almost totally dependent upon her because of "his longstanding mental illness which required frequent hospitalization, his poor vision which rendered him unable to read the deed, his advanced age, his limited education, and his being without legal counsel or any other advisor during the transaction in question," and that the transaction was manifestly unfair to Carl in that he received no consideration for the deed. The court then held that the deed was executed because of undue influence and abuse of a fiduciary relationship, that there was a failure of consideration, that Carl lacked capacity because of physical and mental infirmities to understand sufficiently the nature of the transaction, and

that, therefore, the deed should be set aside and cancelled. The issues raised by Marjorie's complaint for partition were rendered moot by the cancellation of the deed to her. Marjorie has perfected this appeal.

■■ Marjorie initially contends that Carl failed to sustain his burden of proving the existence of a fiduciary relationship by clear and convincing evidence where Carl's own testimony on that point was unclear and unconvincing. Marjorie is, of course, correct that Carl has the burden of proof, but after reading the report of proceedings, we cannot agree that Carl failed to sustain that burden. It was, in fact, Marjorie's own testimony which supports the trial court's finding. Marjorie described how she took care of Carl and his business affairs, how he became confused and relied upon her to manage things for him, and how he repeatedly asked her to take over his property. When Carl testified, he was asked if he had trusted and relied upon his sister. He responded, "A little bit. Not too much." He also indicated that he has trouble remembering past events.

Our supreme court has said that, while blood relationship alone does not indicate a fiduciary relationship, nevertheless, "the term 'fiduciary relationship' * * * exists in all cases in which influence has been acquired and abused or in which confidence has been reposed and betrayed. The origin of the confidence and the source of the influence are immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one trusts in and relies upon another." (*Sawyer v. Creighton* (1949), 403 Ill. 364, 370, 86 N.E.2d 242.) When we consider Marjorie's testimony, together with the evidence showing Carl's physical and mental infirmities, we find the evidence sufficient to support the trial court's findings of a fiduciary relationship.

■■ ■ Next Marjorie contends that, even if there was a fiduciary relationship, Carl could make a valid gift of his property interests to her, and under the facts, Carl's gift to her was fair and just. She says there was no evidence of undue influence. She overlooks the rule that, when a fiduciary relationship is found to exist, the law presumes fraudulent any transaction between the parties by which the dominant party has profited. (*Curtis v. Fisher* (1950), 406 Ill. 102, 92 N.E.2d 327.) In determining whether a particular transaction was fair and in good faith, the fiduciary must show:

> "(1) [T]hat he has made a free and frank disclosure of all the relevant information which he had; (2) that the consideration was adequate, and (3) that the principal had competent and independent advice before completing the transaction." *Schueler v. Blomstrand* (1946), 394 Ill. 600, 611, 69 N.E.2d 328; *Curtis v. Fisher*, 406 Ill. 102, 109, 92 N.E.2d 327, 330.

Here, according to the record, Marjorie admitted that there was no

consideration. Furthermore, her testimony concerning her disclosure of information to Carl was contradictory, and there was almost no direct evidence of independent advice. Carl said that he did not know what he signed, and that testimony obviously was found persuasive by the trial court. We believe the trial court did not err.

Marjorie also argues that Carl did not prove his mental and physical impairment. This contention, like her other arguments, would have us weigh the evidence anew. The trial judge, who saw and heard the witnesses, was in a position far superior to that of a reviewing court to weigh the evidence and to determine the preponderance thereof. (*Schulenberg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624.) We conclude, therefore, that the judgment was not contrary to the manifest weight of the evidence and that it ought to be affirmed.

Affirmed.

ALLOY, P. J., and SCOTT, J., concur.