**Commerce Union Bank, Plaintiff-Appellee, v. Midland National Insurance Company and Robert Lewis Angel, Defendants-Appellants.**

**Gen. No. 64–21.**

Fifth District.

November 13, 1964.

J. E. Horsley and William E. Larrabee, of Craig & Craig, of Mattoon, for appellants.

Fred McCollum and James B. Moses, of Smith, McCollum & Riggle, of Flora, for appellee.

WRIGHT, JUSTICE.

This is an action on insurance contracts brought by plaintiff, Commerce Union Bank, the assignee, under a conditional sales contract against defendants, Midland National Insurance Company and Robert Lewis Angel, the insurors, for damages to a 1959 Mack tractor caused by fire.

During the trial held before the court, without a jury, the defendants asserted the affirmative defenses of arson on the part of the owner of the vehicle and the failure of the plaintiff to furnish proof of loss under the terms of the policies. At the conclusion of the trial, the trial court ruled that under the terms of the loss payable clause, arson on the part of the owner of the vehicle would not be a defense to this action and the evidence relating thereto was stricken. The court further held that the defense of failure to give proof of loss was not proven.

Judgment was entered in favor of the plaintiff in the amount of $4,998.05 and costs. From this judgment defendants appealed.

The Fourth District Appellate Court in Commerce Union Bank v. Midland Nat. Ins. Co., 43 Ill App2d 332, 193 NE2d 230, affirmed the ruling of the trial court with respect to the defense of failure to give proof of loss but disapproved the exclusion of the arson evidence by the trial court and reversed and remanded the cause for a new trial for the limited purpose of having the trial court weigh the evidence with respect to arson and render its determination as to the effect

231

of such evidence with respect to the liability of defendants.

Upon rehearing following remandment, the trial court reconsidered the evidence in full, including the evidence with respect to arson erroneously excluded at the previous trial, and found that defendants failed to prove their special affirmative defense of arson on the part of Lionel Burkett, the owner of the vehicle, and entered judgment for the plaintiff in the amount of $4,998.05 and costs.

The opinion of the Fourth District Appellate Court narrowed the issue for the trial court in this case to the single question of whether or not the evidence which had been excluded from the record was sufficient to establish that Lionel Burkett intentionally ignited the fire which caused the damage to the 1959 Mack tractor insured by defendants.

It appears from the evidence in the record that on June 20, 1960, Lionel Burkett was 42 years of age, married and had his home in Flora, Illinois. For about twenty years prior to that date, he had been engaged in the trucking business. He maintained a garage at Xenia, Illinois and had at one time operated about twenty-five trucks. In the last ten years, he had suffered various financial reverses until in June, 1960, he owned only one truck and was working as a farmer with his father. He had taken bankruptcy at one time and shortly before the loss had several outstanding obligations.

On October 2, 1959, Lionel Burkett purchased the 1959 Mack tractor from Neely Coble Company of Nashville, Tennessee. As a part of the purchase price, he executed a conditional sales contract in the amount of $11,673.36 payable in monthly installments of $324.26. The Neely Coble Company assigned its interest in the conditional sales contract to the plaintiff, Commerce Union Bank. At about the same time, the

defendant, Midland National Insurance Company issued a policy of insurance providing $5,000 coverage on the vehicle for fire, lightning and transportation, naming Lionel Burkett as the insured and naming Commerce Union Bank as loss payee. Defendant, Robert Lewis Angel, a Lloyds of London underwriter, issued a policy of reinsurance incorporating the Midland National Insurance Company and providing excess coverage to the extent of $9,000.

From October, 1959, until the middle of May, 1960, this 1959 Mack tractor was used by Lionel Burkett under contracts with various freight lines. In May, 1960, the tractor needed repairs and since the owner, Lionel Burkett, was farming with his father and had no regular driver, the unit was taken out of service. The tractor was kept at Xenia, Illinois, until the first part of June, 1960, when it was removed to a farm owned by Eber Burkett, the father of Lionel, and stored in a metal clad frame garage. At this time, Lionel Burkett was two months in arrears on the payments under the conditional sales contract and plaintiff had begun proceedings to repossess the tractor.

On the afternoon of June 20, 1960, Lionel Burkett and his father were planting beans on the farm where the tractor was stored. At about 5:30 or 6:00 o'clock p. m., Lionel Burkett was in the garage where the tractor was stored. At this time, the tractor was not damaged and the windows of the cab were rolled down and the doors to the garage were open. He closed the garage doors and returned to the bean field. At about 8:30 or 9:00 o'clock p. m. a storm came up and Lionel Burkett and his father, Eber Burkett, stopped planting beans. Lionel left the farm and returned to his home in Flora, Illinois. During the trip to Flora, it was raining hard and thundering and lightning. He next returned to the farm at about 10:00 or 10:30 o'clock on the following morning and discovered that

233

the cab of the tractor had been gutted by fire. He proceeded to his father's home and the two men returned to the garage and inspected the tractor. Thereafter, they both went to the office of James Reed, the local insurance agent who had sold the insurance policy, and reported the fire.

Although the testimony of the witnesses varies on the physical condition of the garage, there is no conflict in the evidence as to the location and condition of the 1959 Mack tractor on the morning of June 21, 1960. The tractor was setting in the north half of the garage and the inside of the cab was gutted by fire. The glass in the windshield and doors had melted, run down into puddles and recrystalized. The metal door handles and window handles on the inside of the cab doors had melted. The instruments, the materials in the seats, sleeper portion of the cab, and glove compartment were completely destroyed by fire. The aluminum parts next to the firewall were melted. However, the spotlight, which was located on the outside of the left hand door, still had the glass intact and was not broken or melted. The fuel tanks, which were located on the outside of the cab below the floor boards, were not burned. The springs in the seat were still in place.

The uncontradicted testimony as to the garage discloses that it was a building about five or six years old, about thirty-two feet long with posts on eight-foot centers. The roof and exterior of the building was covered with galvanized iron roofing nailed over a wood frame. On the east side of the building were sliding doors which operated on an overhead metal track. The building was wired for 220 electric current, which came in on three wires on the east side of the building above the metal door track. The interior of the building was wired with power outlets and switches around the north side of the building. The

building had a pitched roof with three joists evenly spaced. Immediately above the cab of the tractor were two double rafters and one of the joists. The rafters had an area about two feet in length where they were charred and burned next to the sheathing and metal roof, but were not burned on the bottom side. The wood sheathing between the rafters and the metal roofing was burned in this area. The underside of the metal roofing was white and showed evidence of extreme heat. The joist was not damaged by fire. There was no hole or break of any sort in the metal roofing above the burned area. There was loose hay on the floor between the tractor and a work bench, which was not damaged by fire. There was a corn sheller located about three feet from the right side of the cab, which was covered with a tarpaulin. Both the tarpaulin and the chain on the corn sheller were burned.

Lionel Burkett, the conditional purchaser, testified and expressed the opinion that the fire was caused by lightning.

Eber Burkett, the father of Lionel, testified that on June 20, 1960, there were two farm tractors and some shop tools in the garage with the 1959 Mack tractor; that he first saw the fire damage at about 10:00 o'clock a. m. on June 21, 1960, and at that time it looked like the garage was twisted; that prior to June 20, 1960, the building was in good shape; that there were some scorched places on rafters other than the ones charred; that two bird nests in the building were scorched and burned.

James Reed, the local insurance agent, testified that he noticed some wiring in the shed had burst; that the garage roof seemed to be raised and separated from the corner of the garage; that he knew the tractor was in the garage before the fire, and in his opinion the fire was caused by lightning.

Edward Beneche testified that he is an attorney for Commerce Union Bank but has no personal interest in the outcome of this suit; that he saw the damage to the tractor on or about June 24, 1960, when he went to the farm in an attempt to obtain possession of the tractor; that he noticed the rafters over the tractor were charred and one or two rafters south of the tractor looked scorched.

Jennings Webster, an adjuster for Clay County Fire Insurance Company, testified that he inspected the building for lightning damage on June 21, 1960; that he observed a streak down the outside of the building on the east side; that it looked like lightning had come down from the insulators where the power wires were attached to the building to the metal track above the sliding door; that the rust was knocked off the track and there was a darkened place along the track to the northeast corner of the building; that the building was spread, and the northeast corner of the roof was raised up and the rafter and joist was pulled loose from the plate; that this damage was recent as the timber was bright and showed no evidence of dirt or discoloration; that the light switch inside the garage had burst and lay on the ground; that all of the lights were knocked out, the power plug on the west end of the building was burned and had a discoloration on the receptacle; that bird's nests located in the building were scorched, and there were scorched places around the north side of the building wall near the wiring.

Erich H. Nordstrom testified that he is an independent claim adjuster and has been for fifteen years; that prior to that, he worked as a claim adjuster for various companies; that on July 1, 1960, he went to check the claim on assignment from Midland National Insurance Company; that he saw no separation between the roof and the wall of the garage near the

plate; that he inspected the wiring on the outside of the building, but could see no damage; that the ground wire was in place and there was no breaking or burning in the insulation; that there was evidence of smoke in the garage; that there may have been two charred places in the ceiling of the garage; that the right side of the cab was about even with the charred places in the roof, and there was no evidence of any fire anywhere around on the ground. He stated that he next went back to the scene of the fire in August of 1960; that on this trip he observed that the fire in the rafters was just a small area; that there were two burned places on the rafters; that there were tools in the garage but he did not observe any farm tractors.

Terrance Robert Hoyle, a professional fire investigator with considerable experience in investigating arson cases, testified that he was notified of this loss on October 11, 1960, and was requested to make an investigation by the Midland National Insurance Company, who supplied him with a copy of their file, which he reviewed. He stated that on October 24, 1960, he proceeded to Flora, Illinois, and began to investigate; that he contacted a Mr. Bryden, an assistant State Fire Marshal, and spent three days inspecting the fire scene, taking photographs, interviewing witnesses, and securing the background information; that he made a detailed investigation of the garage and all parts of it, and found no indication that lightning had struck the roof of the garage. He testified that the roof looked normal and in good shape on the outside; that he inspected the outside of the roof over the burned area and it appeared to be free of any burned marks. He stated that if a bolt of lightning were strong enough to penetrate galvanized roofing, it would leave a hole in the roof; that if it were not strong enough to penetrate the roofing, it would leave

237

a scorched mark and it would also cause some disturbance of the sheathing under the roofing. He further testified that the garage roof had not been penetrated by lightning; that the places on the rafters next to the ones that were charred were rotten lumber and not scorched places; that the whitened area on the underside of the metal roofing had been caused by extreme heat; that the burned area in Defendant's Exhibit 4, the tractor, was caused by extreme centralized heating; that this had to be true due to the small area involved and the whitening of the metal roofing which was on the underside. He further stated that an examination of the tractor disclosed a four-ounce Ronson lighter fluid can wedged between two springs in the seat; that he photographed this can as he found it; that he then removed the can and photographed it again to get a clearer picture; that on examination of the garage, he found no areas where it was off the foundation and he found no separation between the roof and the wall. He further testified that when lightning strikes a metal building it well seek its most attractive course to the ground; that the wire in Defendant's Exhibit 11 is a No. 9 copper wire terminated by a rod which is in the ground, and that lightning would have gone down this rod to the ground or down the metal sides of the building to the ground.

Marvin Salzenstein testified that he was a consulting engineer and had considerable experience in investigating fires; that he is acquainted with the metal out of which the seat springs and the lighter fluid can are made; that the melting point of these metals is in the range of 2,000 degree Fahrenheit, and in his opinion the fire damage to the building could not have been caused by lightning. He further testified that a burning of the seat material and other burnable materials inside the cab of the tractor could produce heat sufficient to melt white metal if it burned fast enough,

and that with the windows open on the cab of the tractor the same amount of heat would be produced but it would be dissipated; that the burnable material, unaided by an accelerant or by a sufficient draft, would not produce sufficient heat to melt the white metal. He stated that the galvanized roofing was coated with zinc; that when heated, zinc turns to zinc oxide which is white, and in his opinion it is not possible for lightning to strike one end of this garage building, travel along the metal roof and ignite the underside of the roofing. He testified that the temperature of burning materials depends upon the rate of burning and not upon the amount of material burned; that he does not think that the heat generated by all the combustible materials within the cab of the tractor, plus a four-ounce can of lighter fluid, could produce the heat necessary to melt the glass and metal door and window handles.

 Where there is no eye witness, a fact at issue may be proved by circumstantial evidence, and such evidence consists of proof of facts and circumstances from which the court may infer other connected facts which usually and reasonably follow according to common experience. Devine v. Delano, 272 Ill 166, 111 NE 742. Arson, by its very nature, is usually incapable of direct proof and the evidence is necessarily often of a negative nature. Carpenter v. Union Ins. Society of Canton, 284 F2d (CA 4th) 155. It has been held that the opportunity for the commission of arson, the motive inducing arson, and the identity of the person accused of arson may all be established by circumstantial evidence. People v. Wolf, 334 Ill 218, 165 NE 619; People v. Fitzpatrick, 359 Ill 363, 194 NE 545. Also, when arson is relied upon in a civil action, arson, like any other fact in issue, need be proven only by a preponderance of the evidence. Sundquist v. Hardware Mut. Fire Ins. Co., 371 Ill 360, 21 NE2d 297.

The existence of a certain fact cannot be reasonably inferred from the evidence when the existence of another fact inconsistent with the first can be inferred from the same evidence. A fact cannot be established by circumstantial evidence unless the circumstances are of such a nature and so related to each other that it is the only conclusion that can be drawn therefrom. McKinney v. Illinois Power Co., 26 Ill App2d 193, 167 NE2d 249; Heiden v. Gaddberry, 23 Ill App2d 260, 162 NE2d 260.

We believe the rule with reference to the sufficiency of circumstantial evidence to warrant a reasonable inference of the existence of a fact is well stated in Coffin v. Chicago City Ry. Co., 251 Ill App 169, where the court stated:

". . . a fact cannot be established by circumstantial evidence unless the circumstances are of such a nature and so related to each other that it is the only conclusion that can be drawn therefrom."

The defendants in support of their contention that the finding of the trial court was against the manifest weight of the evidence, cite and place great reliance on Stein v. Girard Ins. Co. of Philadelphia, Pa., 259 F2d 764. In that case an action was brought by plaintiff insured to recover under two fire and extended coverage policies. On the trial, evidence was introduced to prove that the fire, which caused the insured's damage, was of an incendiary origin and that the person starting the fire had to have a key to the front door of the insured's restaurant and that only the insured and a cook, who had nothing to do with causing the fire, had keys. It was further in evidence that no one other than the plaintiff would have benefited financially by a fire or from the proceeds of the insurance, and it was further a fact that the plaintiff

failed to testify or offer any evidence as to his whereabouts or account for his key on the night of the fire.

The trial court instructed the jury to give no consideration whatsoever as to the cause and manner or origin of the fire in question and removed that question from the jury. The Circuit Court of Appeals held that evidence, including testimony that the fire was of an incendiary origin, and that whoever started the fire had a key to the front door of the insured's restaurant and that only the insured and a cook, who had nothing to do with starting the fire, had keys presented a question for the jury as to whether plaintiff caused the fire to collect the insurance and reversed the cause for a new trial.

In Illinois the law is well established that the trial judge, sitting without a jury, has the obligation of weighing the evidence and making findings of fact and that an Appellate Court will not disturb these findings of fact unless the judgment is against the manifest weight of the evidence. Theofanopoulos v. Liddell, 44 Ill App2d 416, 194 NE2d 678; Lubin v. Goldblatt Brothers, Inc., 37 Ill App2d 437, 186 NE2d 64; Vasic v. Chicago Transit Authority, 33 Ill App2d 11, 180 NE2d 347.

Under the evidence in the record before us, the question presented for determination was whether or not Lionel Burkett intentionally caused the fire which did the damage to the tractor. This question was one of fact and not of law to be determined by the trial judge. Stein v. Girard Ins. Co. of Philadelphia, Pa., supra.

There were no eye witnesses to the occurrence here in question and all of the evidence adduced at the trial of the case to prove that Lionel Burkett started the fire that damaged the tractor was circumstantial.

The trial judge saw and heard the witnesses, weighed the evidence, and found that defendants

241

failed to prove their special affirmative defense of arson and we cannot say that this finding of the trial judge is contrary to the manifest weight of the evidence.

The judgment of the Circuit Court of Clay County is affirmed.

Affirmed.

DOVE, P. J. and REYNOLDS, J., concur.