ALVIN W. KRUG, Plaintiff-Appellee, *v.* WILLIAM M. MACHEN *et al.*, Defendants-Appellees.—(WILLIAM DIETER *et al.*, Third-Party Plaintiffs and Third-Party Defendants-Appellants, *v.* THE FIRST NATIONAL BANK IN AMBOY, Third-Party Defendant-Appellee.)

(No. 73-64;

Second District—December 18, 1974.

Reid, Ochsenschlager, Murphy & Hupp, of Aurora, and Nadelhoffer, Hennessey, Dommermuth & Brestal, of Naperville, for appellants.

Aplington & Kaufman, of La Salle, Edward M. Sullivan, of Amboy, and Gunner, Keller & Magdich, of Dixon, for appellees.

Mr. JUSTICE GUILD delivered the opinion of the court:

This action for declaratory judgment was brought by a judgment

creditor, Alvin W. Krug, as plaintiff, in the circuit court of Lee County under the provisions of section 57.1 of the Civil Practice Act (Ill. Rev. Stat., ch. 110, par. 57.1). Krug sought to determine the rights and interests of the parties in a parcel of land which had been conveyed by the judgment debtor, Robert D. Clayton, to the third-party defendants, William and Irene Dieter, and subsequently conveyed to defendant William and Mary Machen. Prior to trial the Machens filed a third-party complaint against the Dieters, and the Dieters filed a complaint as third-party plaintiffs against the First National Bank in Amboy, which had recorded the various deeds involved in these transactions.

After a trial on the merits, the trial court, sitting without a jury, found that Krug had a first and prior lien on the property in the amount of his judgment; that the Dieters were liable to indemnify the Machens for their attorney's fees and for any losses in connection with the lien; and that the bank was not obligated to indemnify the Dieters for any losses in connection with the lien. The Dieters have appealed from this final order of the trial court.

On appeal, none of the parties challenges the trial court's finding that Krug has a first and prior lien upon the property. The question in this court is who must bear the loss in connection with the lien: the Dieters, the Machens, or the First National Bank in Amboy.

Some time prior to June, 1971, the Dieters contacted Francis Duffy, a real estate broker, in an attempt to purchase a piece of property around Amboy, Illinois. Through Duffy's efforts, the Dieters found a piece of property owned by the Machens (hereinafter referred to as the Machen property) and began negotiations to purchase the property.

At the same time the Machens, who were interested in acquiring another piece of property, located a piece of property in Amboy which they determined acceptable. The property (hereinafter referred to as the Clayton property) was owned by Claude and Thelma Reinhold and was subject to a contract to purchase by Robert D. Clayton. As the Machens were interested in selling the Machen property and acquiring the Clayton property, the Machens insisted upon a series of transactions which, they believed, would prevent them from recognizing any taxable gain upon the transfer of the Machen property to the Dieters. The scheme involved a purported sale of the Clayton property to the Dieters and subsequent exchange of the Clayton property for the Machen property.

Thus, on June 28, 1971, the Machens and Dieters signed an agreement entitled "Offer to Purchase" which provided that the Dieters would purchase the Machen property for $18,400. The terms of the "Offer to Purchase," however, contained the following terms:

"Mr. and Mrs. William J. Dieter are to purchase 47 acres from

Robert D. Clayton which is located at South West edge of Amboy, Ill. and trade to Mr. and Mrs. William M. Machen for about 40 acres (the Machen property.) Mr. and Mrs. William M. Machen are to pay William Dieter a difference of $9,600."

The agreement was made contingent upon the signing of supplementary contracts by Clayton for the sale of the Clayton property.

Subsequently, in July, 1971, the Machens and the Dieters entered into a formalized agreement entitled "Articles of Agreement" which merely provided that the Dieters would buy the Machen property for $18,400, $2,000 of which being deposited in escrow at the First National Bank in Amboy. Also in July, 1971, Clayton and the Dieters entered into an agreement entitled "Articles of Agreement" which provided that the Dieters would buy the Clayton property for $28,000 of which $2,000 would be deposited in escrow at the bank and $9,600 would come from William M. Machen.

On August 6, 1971, the Dieters and Machens entered into an agreement, which provided that whereas the Dieters had contracted to purchase the Clayton property, and whereas the Machens were owners of the Machen property, and whereas the Machens had agreed to pay $9,600 of the consideration for the purchase of the Clayton property, that upon the acceptance of title to both of the parcels, the parties would agree to exchange without additional consideration the respective tracts of land.

A warranty deed from Robert Clayton conveying his interest in the Clayton property to the Dieters was signed and dated on September 22, 1971. On September 24, 1971, a judgment by confession was entered against Clayton and in favor of Krug for the amount of $6,812. A memorandum of this judgment was filed with the Lee County recorder of deeds on September 24, 1971.

On September 27, 1971, a closing was held at the First National Bank in Amboy. At the closing were Mr. and Mrs. Machen, Mr. and Mrs. Dieter, Robert Clayton and Claude Reinhold. Warranty deeds from the Reinholds to Clayton for the Clayton property, from the Dieters to the Machens for the Clayton property, and from the Machens to the Dieters for the Machen property were dated on September 27, 1971, the date of closing. Also dated September 27, 1971, were five checks written by William Machen, including one to Robert Clayton in the amount of $9,600. A check written by William Dieter payable to Robert Clayton in the amount of $14,400 was also dated September 27, 1971. The end result of the closing was that the Machens owned the Clayton property and the Dieters owned the Machen property.

After the closing, on September 27, 1971, the First National Bank in

Amboy had in its possession all of the warranty deeds relative to this transaction. The bank sent the deeds to be recorded on the day after the closing, September 28, 1971, but they were returned to the bank due to some error in failing to notarize or pay a fee. Subsequently, the bank cashier read in the Lee County Credit Report that a judgment for $6,182 was entered against Mr. Clayton in favor of Krug, Clayton's brother-in-law, on a note executed over 8 years before judgment. When the cashier informed the bank's attorney, Mr. Sullivan, of this fact, Sullivan, after consulting with the Dieter's attorney, told the cashier not to record the documents. Due to a bank error, however, the deeds were subsequently recorded despite the instructions of Sullivan.

### Chronology of Documents in Question

| | |
|---|---|
| September 22, 1971 | Warranty Deed—Robert C. Clayton and Lucille Clayton to William Dieter |
| September 24, 1971 | Judgment entered in favor of Alvin Krug against Robert D. Clayton |
| September 24, 1971 | Memorandum of Judgment filed in Recorder's Office. |
| September 27, 1971 | Warranty Deed—Claude and Thelma Reinhold to Robert D. Clayton |
| September 27, 1971 | Warranty Deed—William and Irene Dieter to William and Mary F. Machen |
| September 27, 1971 | Mortgage—William and Mary Machen to First National Bank in Amboy |

The Dieters contend that ultimate liability for the loss incurred by the lien should be upon the First National Bank in Amboy. The Dieters argue that the bank breached its duty as escrowee for the parties in that it recorded the deeds contrary to the specific instructions of the Dieter's attorney.

■■ We disagree. Although there was language in the various agreements made by the parties about an escrow agreement, there is no evidence that any party made an agreement with the bank concerning the bank acting as escrowee. The bank did no more than furnish a place for the closing, advance part of the Machen's purchase price, take a note and mortgage from them, and record the deeds for all the parties. The parties made no provisions for the money received by the bank before closing to be put in escrow and the bank paid no money out contrary to any agreement. Therefore, the findings of the trial court that the bank was not liable to indemnify the parties was not contrary to either the law or the evidence.

■■ The question of whether the Dieters must indemnify the Machens for any loss in connection with the lien on the Clayton property depends upon whether the legal relationship between the Machens and Dieters with reference to the Clayton property was one of principal and agent or one of buyer and seller. If the relationship were one of buyer and seller, then the series of transactions described herein constitute a sale of the Clayton property by Clayton to the Dieters and a subsequent equal exchange of the Clayton property for the Machen property by the Machens and Dieters by warranty deed. Thus, in that case, the Dieters' warranty deed to Machen would be effective to warrant that no encumbrances were upon the Clayton property. Consequently, the Dieters would be obligated to indemnify the Machens for any loss in connection with the lien. If the relationship were one of principal and agent, then this series of transactions constitute a sale of the Clayton property by Clayton directly to the Machens with the Dieters acting as agent, and a contingent sale of the Machen property by the Machens to the Dieters. Under the principal and agent theory the Dieters' warranty deed would be merely a matter of form and was ineffective in warranting that the property was free from encumbrances. Consequently, the Dieters as agents would only have to indemnify the Machens if their conduct were not free from negligence.

The trial court made no specific finding of fact or law with regard to this issue of agency. However, it is apparent from the trial court's order requiring the Dieters to indemnify the Machens that the trial court found either that there was no agency relationship between the parties or that there was an agency relationship but that the Dieters acted negligently.

■■ The issue of whether a relationship of principal and agent exists is a question of fact. (See *Yuhas v. Allis-Chalmers Distribution Service Corp.* (1973), 12 Ill.App.3d 814, 299 N.E.2d 166.) Thus, we will not disturb the findings of the trial court unless they are against the manifest weight of the evidence. See *Meyer v. Ranson* (1967), 80 Ill.App.2d 175, 224 N.E.2d 293.

■■ After a careful review of the record, we find that a relationship of principal and agent existed between the Machens and Dieters when the Dieters obtained the Clayton property and transferred it to the Machens. Generally, an agent is defined as one who undertakes to manage some affairs of another by his authority, subject to his control and on his account. (*Hoffman & Morton Co. v. American Insurance Co.* (1962), 35 Ill.App.2d 97, 102, 181 N.E.2d 821; *Dean v. Ketter* (1946), 328 Ill.App. 206, 210, 65 N.E.2d 572; *Equitable Produce & Stock Exchange v. Keyes* (1896), 67 Ill.App. 460; Restatement (Second) of Agency § 1 (1958). Thus, the distinguishing characteristics of an agency relationship is the

principal's right to control the agent (see *Osborn v. City of Harvey* (1973), 16 Ill.App.3d 740, 306 N.E.2d 601) and the agent's ability to subject the principal to personal liability and to create new rights in his favor. *Hoffman & Morton Co. v. American nsurance Co., supra.*

In the case before us, the contracts and acts of the parties clearly show that the Dieters were authorized by the Machens to deal with Clayton for the purchase of the property. In their dealings with Clayton the Dieters were subject to the control of the Machens. The Machens themselves had worked out the price of the Clayton property. The Dieters could only enter into the contract to purchase the Clayton property on the terms dictated by the Machens. The Dieters also were under a duty to reconvey the Clayton property to the Machens. Additionally, by signing the Clayton-Dieter articles of agreement containing the provision that the Machens would pay $9600 to Clayton, the Dieters made the Machens personally liable for at least $9600, if not for the whole amount. Such personal liability was expressly acknowledged by the Machens in their August 6th agreement with the Dieters. Also, the Machens paid the $9600 directly to Clayton.

■■ Additionally, the Restatement (Second) of Agency has distinguished an agent from a supplier or seller in the following manner: "One who contracts to acquire property from a third person and convey it to another is the agent of the other only if it is agreed that he is to act primarily for the benefit of the other and not for himself." Restatement (Second) of Agency § 14K (1958).

In this case the Dieters were acting primarily for the benefit of the Machens in obtaining the property and in conveying it to the Machens. The general belief of the parties was that by attempting to have the Dieters "buy" the Clayton property and then "exchange" it for the Machen property, the Machens would not recognize any taxable gain on these transactions. The Dieters would not gain anything by these maneuverings. They would have still ended up with the Machen property for a price of $18,400 if they had simply bought the Machen property outright. Therefore, the manifest weight of the evidence in this case sustains a finding of an agency relationship existing between the Dieters and the Machens.

■■ However, while we find that the Dieters were the agents of the Machens, the Dieters may still have to indemnify the Machens for any loss suffered in connection with the lien. Although "a principal is subject to a duty to exonerate an agent * * * upon obligations arising from the * * * ownership of * * * things which he is authorized to hold on account of the principal" (Restatement (Second) of Agency § 439 (1958)), "[u]nless otherwise agreed an agent who holds the title

to something for the principal is subject to a duty to the principal to use reasonable care in the protection of the title which he so holds * * *." Restatement (Second) of Agency § 423 (1958).

In this case we find that the manifest weight of the evidence indicates that the Dieters exercised reasonable care in the protection of the title to the property. The contract between the Dieters and Clayton was within the terms prescribed by the Machens and contained provisions for holding part of the payment in escrow with the bank and for making part payment conditional upon the delivery of a good and sufficient warranty deed and a preliminary title report from Chicago Title & Trust Company. As the title to the Clayton property was transferred to the Dieters at the same closing in which the Dieters transferred title to the Machens, the Dieters merely held title just long enough to transfer it to the Machens. Thus, it is also apparent that the Machens took over responsibility for protecting the title at the closing.

■■ Therefore, we find that the order of the trial court requiring the Dieters to indemnify the Machens for any losses incurred because of Krug's lien is against the manifest weight of the evidence. The Dieters were merely acting as the agents of the Machens in acquiring, holding, and transferring title to the Clayton property. They exercised reasonable care in the conducting of their duties. They are not liable to indemnify the Machens.

The Machens raise the contention that because the question of agency is raised by the Dieters for the first time in this appeal, this court is precluded from considering the question. We find this contention without merit. The Dieters raised the question of agency in their answer to the Machens' third-party complaint in the form of an affirmative defense. Although this affirmative defense in the complaint could have been set out more clearly, it was sufficient to give the Machens notice of this defense.

The Dieters also raise a question concerning the pleadings. Our holding in this case makes it unnecessary for us to decide this question for purposes of this appeal.

■■ For the foregoing reasons the trial court's judgment as to Krug and the First National Bank in Amboy is affirmed. However, we have found that the trial court's finding that the Dieters must indemnify the Machens was against the manifest weight of the evidence. Where a cause is tried by a court without a jury and where the parties have had the opportunity to present all their evidence, as in this case, no useful purpose is served by remanding the cause to the trial court for a new trial. (*Dayton Scale Co. v. General Market House Co.* (1929), 335 Ill. 342, 167 N.E. 100; *Cromwell Paper Co. v. Wellman* (1959), 23 Ill.App.2d

263, 162 N.E.2d 500; *Vallarta v. Lee Optical of Missouri, Inc.* (1973), 12 Ill.App.3d 112, 298 N.E.2d 212.) Therefore, pursuant to the appellate court's power to enter any judgment or order and grant any relief which a case may require under Supreme Court Rule 366 (Ill. Rev. Stat. 1971, ch. 110A, par. 366(a)(5)), the judgment of the trial court against the Dieters and in favor of the Machens is reversed and the cause remanded with directions to enter judgment for the Dieters.

Affirmed in part, reversed in part and remanded with directions.

T. MORAN, P. J., and SEIDENFELD, J., concur.