Kenneth Mineika, Plaintiff-Appellee, *v.* Union National Bank of Chicago *et al.,* Defendants-Appellants.

(No. 60764;

First District (3rd Division)—June 19, 1975.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Robert H. Joyce and Grady B. Murdock, Jr., of counsel), for appellants.

Dennis G. Kral, of Homewood, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Kenneth Mineika, brought this action in the circuit court of Cook County against Rosemoor Auto Exchange (hereinafter Rosemoor) and Union National Bank of Chicago (hereinafter the Bank) to recover a 1967 Cadillac or the value of said automobile, alleged to have been wrongfully detained by defendants. Plaintiff also sought the sum of $5,000 in special damages for the alleged detention.

The Bank filed a motion to dismiss the action on the ground that plaintiff was in default under the terms of a certain retail installment contract and its action in repossessing the vehicle in question was contractually privileged. After the court denied its motion, the Bank filed an answer denying the pertinent allegations of the complaint and raising the affirmative defense of contractual privilege. Defendant Rosemoor did not answer or appear in the trial of this cause. A bench trial was held on May 14, 1974, and plaintiff appeared pro se. At the close of all the evidence, the trial court entered judgment in favor of plaintiff for $3,420. The Bank has brought this appeal.

On May 14, 1970, plaintiff purchased a used 1967 Cadillac from Rosemoor for $3,420. Plaintiff made a down payment of $920. The balance of the purchase price, plus finance charges, was to be paid by plaintiff in 23 monthly installments.

The financing arrangement was embodied in a retail installment contract executed by Rosemoor and plaintiff on the date of the sale. Under its terms plaintiff warranted that he would not use, or permit the vehicle to be used in violation of any law. Further, the contract set forth specific events or conditions that would constitute an event of default. These included:

"(b) Failure of Buyer to perform any agreement or warranty made by Buyer * * *

(d) Seizure or forfeiture of said motor vehicle for violation of any law or ordinance * * *

(f) Reasonable insecurity of the holder * * *"

Upon the occurrence of any event of default, the holder of the contract had the right to declare the entire debt due and to take possession and dispose of the vehicle. On the date of the sale, the contract was purchased from Rosemoor by the Bank under a full recourse agreement.

Plaintiff was the sole witness at the trial of this cause. From his uncontroverted testimony it appears that on August 10, 1970, plaintiff was arrested for possession of marijuana and his vehicle was seized by the police pursuant to section 36—1 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 36—1). On the following day plaintiff appeared in the criminal division of the Cook County circuit court. The judge discharged plaintiff from further criminal proceedings and told him that the assistant State's Attorney would authorize release of his vehicle. The assistant State's Attorney advised plaintiff that a letter of disclaimer from the Bank was required before the vehicle would be released. Plaintiff thereupon proceeded to the Bank to obtain the necessary document.

At the Bank plaintiff talked to a secretary who told him the document would be drawn up and signed. Returning later to pick up the letter, plaintiff was advised that Mr. Vanzil, assistant vice-president of the Bank, wanted to see him. During the interview Vanzil informed plaintiff that the Bank did not like his kind and did not think he was fit to own an automobile. Vanzil then stated that the Bank was going to repossess the automobile and told plaintiff to leave the Bank. On August 14, 1970, the Bank notified plaintiff that the automobile would be sold in 10 days unless he redeemed it within that time. Upon the expiration of the 10-day redemption period, plaintiff learned that the vehicle had been sold.

Concerning the criminal charge plaintiff testified that he had been stopped by officers of the Chicago Police Department; that a search of the automobile was subsequently conducted; and that the officers claimed to have found a marijuana cigarette in the sun visor. Plaintiff also testified that there were no drugs in the vehicle on the evening in

question and if marijuana was found it must have been planted in the automobile to create grounds for his arrest.

On appeal, the Bank first contends that the trial court erred in rejecting its affirmative defense of contractual privilege. Citing subsection 6(d) of the contract, the Bank states that seizure of the vehicle for violation of any law is an event of default. Since plaintiff admitted that the automobile was seized by the police, the Bank maintains that its right to repossess the vehicle was clearly established by the evidence and its action, under the circumstances, was legally and contractually proper. The Bank claims that the trial court erred in holding that criminal conviction is necessary to establish a default under this provision.

The language of subsection 6(d) is clear and unambiguous, and there is no need to resort to rules of construction or look to extrinsic facts surrounding the making of the contract to discern its meaning. Under the plain language of the agreement, the holder of the contract has the right to declare a default if the vehicle is seized for violation of the law. The term "violation" has an ordinary and popular significance; it means an act of breaking or transgressing the law. (*Rabon v. South Carolina State Highway Department* (1972), 258 S.C. 154, 187 S.E.2d 652.) In order to establish a default under subsection 6(d) the Bank was required to prove not only that the vehicle was seized, but also that the seizure was directly related to an act in transgression of the law.

■■ When a violation of the law is relied on in a civil action, such violation, like every other fact in issue, need only be proved by a preponderance of the evidence. (*Commerce Union Bank v. Midland National Insurance Co.* (1964), 53 Ill.App.2d 229, 202 N.E.2d 688.) The fact that an individual was not convicted of a criminal charge is not of itself a defense to a civil claim arising from the same matter. (*White v. Youngblood* (1937), 367 Ill. 632, 12 N.E.2d 650, *cert. denied* (1938), 304 U.S. 583.) Thus, in the present case, the Bank's claim of default under subsection 6(d) does not fail because the alleged violation was not evidenced by a judicial determination of criminal culpability. Rather, the defense fails because the evidence adduced at trial does not establish that seizure of the vehicle was related to criminal conduct or the presence of criminal contraband.

■■ The sole evidence relevant to the alleged violation of the law was the testimony of plaintiff. The Bank offered no evidence to contradict plaintiff's testimony and plaintiff's claim of innocence remained uncontroverted. Although the Bank argues that evidence of criminal contraband and conduct was not suppressed on fourth amendment grounds, it does not explain why such evidence was not offered at this trial. The record establishes only that the automobile was seized in connection

with an accusation of criminal conduct. The evidence does not support a finding that a seizure of the automobile was related to a violation of the law. Since the Bank failed to prove all elements necessary to constitute a default under subsection 6(d), its affirmative defense based on that provision must be rejected. Although we do not agree with the trial court's finding that a criminal conviction is a condition precedent to default under subsection 6(d), it is clear that the result as to this issue is the same without regard to the error.

The Bank next urges that the trial court improperly rejected its affirmative defense based upon subsection 6(f) of the retail installment contract. Under that provision "reasonable insecurity of the holder" constitutes an event of default giving rise to the holder's right of repossession. The Bank claims that seizure of the vehicle in question, pursuant to section 36—1 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 36—1), created a reasonable insecurity in the Bank regarding repayment of the loan and preservation of the collateral.

In order to establish a right to take possession of the property under an insecurity clause, a party must show that it had reasonable grounds to believe that its investment was unsafe (*Burris v. Commercial Credit Corp.* (1957), 15 Ill.App.2d 458, 146 N.E.2d 218 (abstract opinion)) and that it exercised its judgment in good faith. (*Hogan v. Akin* (1899), 181 Ill. 448, 55 N.E. 137.) Here, the Bank claims that seizure of the vehicle created reasonable grounds for it to feel insecure and that the evidence requires a finding that an event of default under subsection 6(f) had occurred. In support of this proposition the Bank relies on section 36—2 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 36—2) which provides that the State's Attorney may remit a seized vehicle to the owner or, alternatively, institute forfeiture proceedings against the vehicle. Under the Bank's view, if the auto was remitted to plaintiff he might have absconded with the collateral to avoid criminal prosecution, forfeiture proceedings and/or monthly payments. If forfeiture proceedings were instituted, the vehicle might ultimately have been destroyed, or sold at a public auction. In view of these apparent dangers, the Bank maintains that the collateral and its investment were seriously jeopardized and evidence of the seizure, in itself, established that the Bank had reasonable grounds to feel itself insecure.

The reasonableness of the Bank's alleged feeling of insecurity is not supported by the record. From the evidence adduced at trial it appears that the State was ready to return the automobile to plaintiff upon receipt of the Bank's disclaimer. It further appears that plaintiff immediately went to the Bank and made a good-faith effort to obtain the necessary document. Indeed, when the Bank learned of the seizure of the

vehicle, criminal charges against plaintiff already had been dismissed and payments on the vehicle were up to date. In light of these uncontroverted facts, the Bank's feeling of insecurity, based on the possibility that the plaintiff would abscond with the automobile to avoid criminal and civil prosecutions, cannot be deemed reasonable.

Similarly, the Bank's claim of reasonable insecurity, based on its belief that forfeiture proceedings might be instituted against the vehicle, is not supported by the evidence. The record indicates that the State's Attorney was ready to release the auto to plaintiff upon receipt of the Bank's disclaimer. The record further reveals that an officer of the Bank interviewed plaintiff and, at that time, had the opportunity to become fully apprised of the circumstances under which the vehicle was then being held. Under the circumstances, the Bank's mistaken belief that the collateral might still be subject to forfeiture proceedings is not a reasonable ground for insecurity. The Bank failed to prove that grounds existed for taking possession of the property under the insecurity clause, and its affirmative defense based upon subsection 6(f) was properly rejected.

The Bank finally contends that the trial court applied an incorrect measure of damages and the amount of the judgment is therefore improper. Citing *Crosby v. City of Chicago* (1973), 11 Ill.App.3d 625, 298 N.E.2d 719, the Bank asserts that where plaintiff's claim is for the wrongful detention of a chattel, damages are limited to the reasonable value of the use of the chattel during the period of wrongful detention. Since plaintiff offered no evidence to demonstrate the value of the use of the motor vehicle or the cost of hiring a substitute vehicle during the period of detention, the Bank states that plaintiff is entitled only to nominal damages.

■■ In an action for wrongful detention of a chattel, a party seeks damages for the loss of use of the property during the period of wrongful detention. (*Crosby v. City of Chicago; Cottrell v. Gerson* (1939), 371 Ill. 174, 20 N.E.2d 74.) The period of wrongful detention, upon which the claim is based, is measured from the time the property is wrongfully taken to the time the property is returned. (*National Contract Purchase Corp. v. McCormick* (1931), 264 Ill.App. 63.) However, in the present case, plaintiff seeks recovery of a chattel alleged to have been unlawfully detained, or its value, together with damages for the wrongful detention. The claim is not only for the wrongful detention of a chattel. Rather the complaint states a cause of action for the relief that was formerly available in a detinue action under the common law. *Johnson v. Commercial Credit Corp.* (1949), 339 Ill.App. 122, 88 N.E.2d 737.

■■ The Civil Practice Act abolished the distinction in the name, forms and pleadings of actions in this State. Section 50(1) of the Civil Practice

Act (Ill. Rev. Stat. 1973, ch. 110, par. 50(1)) provides in part that the court "shall determine the rights of the parties and grant to any party any affirmative relief to which he may be entitled on the pleadings and proofs." Under common law, an action in detinue would lie for the recovery of a chattel or its value if the chattel could not be had. A verdict in favor of plaintiff in detinue entitled him to return of the property or, if the property could not be restored, a judgment in the amount of the property's value. (*Libby Furniture & Appliance Co. v. Nabors* (1967), 86 Ill.App.2d 381, 230 N.E.2d 28.) In the present case, the record reveals that the vehicle in question had been sold and could not, therefore, be restored to plaintiff. Under section 50(1) of the Civil Practice Act, plaintiff was entitled to a judgment for the recovery of the value of the vehicle.

■■ In determining the value of property that cannot be restored, the finder of fact may consider purchase price as a basis for valuation, as well as any other evidence that is material to the issue of value. (*Behrens v. W. S. Bills & Sons, Inc.* (1972), 5 Ill.App.3d 567, 283 N.E.2d 1.) Accordingly, we hold that the measure of damages applied by the trial court in the present case was proper.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DEMPSEY and MEJDA, JJ., concur.