ERWIN LAZARUS, Plaintiff-Appellant, *v.* MICHAEL PASCUCCI *et al.*, Defendants-Appellees.

First District (5th Division)   No. 77-1328

Opinion filed July 20, 1979.

Donald J. Brooks, of Chicago (William J. Harte, Ltd., of counsel), for appellant.

Ackerman, Durkin and Egan, of Chicago (Steven M. Levin, of counsel), for appellees Albert Wittlin and Grand Sports Center, Inc.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff brought this action against Michael Pascucci (Pascucci), Grand Sports Center, Inc. (Grand Sports), Albert Wittlin (Wittlin), and Thomas Nilles (Nilles) for an accounting for the unauthorized conveyance of plaintiff's property to Nilles, who had been dismissed earlier and is not involved in this appeal. Following a nonjury trial, the court entered judgment for plaintiff against Pascucci in the amount of $28,000 and for defendants, Grand Sports and Wittlin. Plaintiff appeals from that judgment and seeks to have this court either: (1) vacate the judgment in favor of defendants, Grand Sports and Wittlin, and enter judgment for plaintiff against those defendants; (2) to reverse the judgment in favor of those defendants and remand the cause with directions to enter judgment for plaintiff against said defendants; or (3) reverse and remand for a new trial against those defendants or such other relief to which plaintiff is entitled.

Plaintiff raises the following issues on appeal: (1) whether the trial court applied the correct burden of proof; (2) whether propositions of law are required to be submitted and stated by a trial court to provide a proper basis of appellate review; (3) whether the application of erroneous

propositions of law require reversal; and (4) whether proof of a criminal act in a civil case may be by a preponderance of the evidence.

A review of certain undisputed background facts is necessary to adequately understand the pleadings and contentions set forth at trial. In April 1974, plaintiff decided to buy a boat. He became acquainted with Wittlin through his girlfriend, who lived at the Wittlin residence. Wittlin was a part owner of Grand Sports, whose business included selling boats. Wittlin suggested that Lazarus contact Pascucci, a part-time employee of Grand Sports, regarding a boat. Lazarus was unable to find a suitable boat at Grand Sports. Lazarus and Pascucci later purchased a boat at Pistakee Marina in Fox Lake. Title was placed in Grand Sports' name, the bill of sale being issued to "Michael Pascucci representing Grand Sport Center." Payment was made by Pascucci who was reimbursed by Lazarus. All the subsequent repairs, maintenance and expenses for the boat were billed to Grand Sports which Lazarus reimbursed.

At the end of the 1974 season, Lazarus decided to sell the boat. Pascucci was able to find a purchaser, Nilles, with the aid of a friend, Brian Oken. Nilles made a $1000 deposit and a subsequent payment of $8500 to Pascucci who deposited both in his own checking account.

Sometime in October or November, a disagreement over the payment of sales tax due on the transfer of title from Grand Sports to Lazarus caused an end to the friendship between Lazarus and Wittlin. On January 23, 1975, Lazarus paid the disputed tax and title was transferred from Grand Sports to one Howard Usen, Lazarus' nominee. The transfer document was on Grand Sports' stationery and was signed by Pascucci for Grand Sports. According to Wittlin, this was the last time that he dealt with Lazarus, and Lazarus admitted that "nearly all further discussions about the sale were between Lazarus and Pascucci."

On February 10, 1975, Pascucci completed the sale to Nilles, received a check made payable to him for the balance of the purchase price, and executed the following instrument:

### "BILL OF SALE

I hereby transfer, assign and convey all of my right, title and interest in and to a 1974 Fiberglass Trojan F32 Express Cruiser boat, known as the 'C-Jems', Serial No. TRO 347474, Port Engine Serial No. 4158921, Starboard Engine Serial No. 416983, with all accessories thereon, (including but not limited to, 6.5 KW generator, air conditioning, electric heaters, automatic pilot, engine synchronizers, digital depth finder, hailer, 2-radio telephones, extra fuel tanks of 100 gallon capacity, teak swim platform, monamatic head with shower, electric range, with rotissery oven, refrigerator, electric remote control spotlight, fuel

fume indicator, compass) in consideration of the payment to me of $34,500.00.

I hereby warrant that my interest in said boat is free and clear of all liens and encumbrances, and I hereby agree to hold Thomas Nilles harmless from any claims that may be made against said interest. I further warrant that I hold 100% of the right title, and interest in and to said boat.

(signed)<br>Michael Pascucci

Bernhard Miller
Notary Public"

Pascucci appropriated the money for his own use and never paid Lazarus.

A meeting was arranged to attempt some sort of settlement between Lazarus and Pascucci, but no agreement was reached. Lazarus then brought the instant suit.

In the original complaint, Usen, Lazarus' nominee, sought an injunction, rescission, or other equitable relief against Pascucci, Grand Sports, Wittlin, Nilles and Pistakee. An amended complaint substituted Lazarus as plaintiff. Nilles counterclaimed to prevent any interference with his use and ownership of the boat. An order was entered declaring Nilles owner of the boat but it did not fix the liabilities of the other parties. Nilles was then dismissed from the suit. Plaintiff filed a second amended complaint, which is the basis of this action. He sought an accounting, damages, and equitable relief against Pascucci, Grand Sports, and Wittlin. The complaint alleged that Grand Sports concealed the true ownership of the boat on the sale to Nilles and as a result plaintiff lost the purchase price. Additionally, it alleged payment to Grand Sports for a "slip" (mooring) which was not provided. Damages were sought against Wittlin and Pascucci individually and as agents of Grand Sports for their participation in the sale.

The following pertinent testimony concerning the sale of the boat to Nilles was adduced at the trial:

Plaintiff testified that Wittlin had originally told him that Pascucci was "his boat man" and that he worked for the corporation. Pascucci told him that he worked for Grand Sports and "had a piece of the action." Wittlin also suggested putting the boat in Grand Sports' name.

Plaintiff told Wittlin that he would like a "slip" on Lake Michigan for the summer. Wittlin told him to see Pascucci because he had the proper connections. Pascucci told plaintiff that the slip at Diversey Harbor would cost $3000, which plaintiff paid. In October 1974 Pascucci told plaintiff that because he had not used the slip in Diversey Harbor, he had lost it

and the $3000. In order to get a slip in Belmont Harbor for the next summer, plaintiff gave Pascucci an additional $2500. Plaintiff never requested a receipt from Pascucci because "Pascucci was Wittlin's man, worked for Grand Sports Center, and since I was doing business with Wittlin and Grand Sports Center, if Pascucci is his man, I have no reason to doubt or mistrust him."

In November 1975, plaintiff told Wittlin that he wanted to sell the boat. Wittlin told him that before he could sell the boat, a sales tax had to be paid. Wittlin told plaintiff to discuss it with Pascucci, since Pascucci may have someone to buy the boat. Pascucci told him that "he would look for a buyer, that they would, Grand Sport would look for a buyer." Plaintiff agreed to compensate Pascucci for his efforts. About a week later the disagreement over the sales tax occurred whereby Wittlin's and Lazarus' friendship ended.

In late November or early December Pascucci told plaintiff that he had located a buyer with the help of a third party, Brian Oken. Several days later plaintiff called Wittlin and asked about the purchaser. Wittlin told him that he was waiting for the purchaser's financial statement but that he did not know his name. Plaintiff did not hear anything more for a couple of weeks and called Pascucci. Pascucci described problems between himself and Wittlin and told plaintiff that Wittlin had kept $500 of the $2500 plaintiff had given to secure a slip.

In the beginning of January, plaintiff told Wittlin he wanted title to the boat. On January 23 a meeting was held at Grand Sports to transfer title. At the meeting Wittlin ordered a transfer document to be prepared. Plaintiff demanded that the words "of Grand Sports Center" be inserted after Pascucci's name and Wittlin acceded to this but refused to sign it himself.

In March 1975, Lazarus found a buyer on his own for the boat but after contacting Pistakee Marina he learned that the boat had already been sold. He called Pascucci at Grand Sports and Pascucci told him that the boat had been sold and the proceeds spent. He was unable to contact Wittlin and Pascucci told him that Wittlin would not answer his phone calls. Pascucci also told him that Wittlin knew about the money. Pascucci and plaintiff attempted to work out a repayment plan but were unable to do so.

Plaintiff further testified that after the transfer of ownership to Usen, Wittlin still had the "watercraft certificate" and that "in the eyes of the State of Illinois the boat was not transferred until that certificate was sent in." He was told that the certificate would be signed over later and found out that the boat had not been registered with the State. He also testified that he never authorized Wittlin, Grand Sports, or Pascucci to sell the

boat. Wittlin never told him that Pascucci was acting independently or that he was not an agent of Grand Sports.

Defendant Wittlin testified as an adverse witness pursuant to section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 60.) He denied telling plaintiff that Pascucci was in charge of boat sales at Grand Sports. He stated that plaintiff put the boat in Grand Sports' name without authorization and that when he was told of this he agreed since it was too late to change it. He testified that in April 1974, Mr. Miller, another part-owner of Grand Sports, was in charge of boat sales at Grand Sports.

Concerning the sale of the boat to Nilles, he knew there was a prospective buyer who had made a deposit but stated that plaintiff and Pascucci had handled the transaction. He learned of the completed sale sometime in June or July 1975. He denied receiving any money from plaintiff for the purpose of securing a slip.

Cynthia Cozzo testified. When Lazarus first expressed an interest in a boat, Wittlin told her "I want you to go down to my business, Grand Sport. I want you to see a young man who works for me by the name of Michael Pascucci. He is a crackerjack in the boat department. He knows everything there is to know about boats." She also recalled that Lazarus asked Wittlin how to secure a slip and Wittlin told him to see Pascucci. Lazarus later paid Pascucci $3000 for a slip and later another $2500 for a second slip. Concerning the sale of the boat, she stated that Lazarus did not ask Wittlin to sell the boat for him but asked Pascucci to look for a buyer.

Albert Wittlin testified in his own behalf. He stated that when Lazarus told him he wanted to sell the boat, he told Lazarus that "we" did not sell that large a boat and could not help him. He suggested Lazarus contact Pascucci for help. Wittlin testified that Pascucci was an independent boat broker. Lazarus never asked Wittlin to sell the boat. He did not meet plaintiff again until the January 23, 1975, meeting to transfer ownership. He stated that a dealer is not required to have a watercraft certificate to transfer title to a buyer but that a subsequent owner must transfer title to a purchaser by a watercraft certificate. After this meeting he did not speak with plaintiff again. He was not invited to or present at the meeting between Lazarus and Pascucci to attempt a settlement.

Michael Pascucci testified. In April 1974, he worked part-time at Grand Sports and full-time at another job. When Lazarus decided to sell the boat he asked Pascucci to sell the boat and told him he would be compensated. He contacted Oken, another broker, about prospective buyers. In September or October, 1974, he informed Lazarus that Oken had located a buyer who had paid $1000 as a downpayment. He told Lazarus that he had given the $1000 to Oken and Lazarus made no

objection. In early December, Lazarus was concerned about his argument with Wittlin and that he might not be able to sell the boat. Pascucci assured him that Wittlin had nothing to do with whether or not Lazarus could sell the boat. Lazarus knew the boat had been tentatively sold to Mr. Nilles and did not object. He told Pascucci that he wanted $25,000 for himself and any greater amount could be kept. Later on December 31, Pascucci met Nilles at Grand Sports and received a second check for $8500 made payable to himself. He told Lazarus about this and Lazarus told him to "Get the rest of the money. Let's complete the transaction."

At the January 23 meeting, Pascucci told Lazarus that he had given Nilles a preliminary bill of sale. In February 1975, he told Lazarus that he had the balance of the price and had deposited it in his checking account and had given Nilles a bill of sale. Lazarus told Pascucci to withdraw the money in $5000 increments and pay it to him. Later in March, Pascucci and Lazarus met to effect a settlement. Lazarus wanted $33,000 of the purchase money while Pascucci claimed he owed only $25,000.

Pascucci stated that before the original purchase of the boat he had told Lazarus that the purchase had nothing to do with Grand Sports. The original certificate of resale was mistakenly made out to Grand Sports by Pistakee because the store's tax number was used on the sale. Pascucci never told Wittlin about this. Pascucci denied receiving any money from Lazarus for the purpose of securing a slip.

At the end of the hearing the court stated its decision as follows:

"In any event, as far as that is concerned, I think that Michael Pascucci is an admitted debtor in that amount. And as claimed; that $9,500 he was entitled to for what he would be able to derive from the sale that came into his hands. However, let me say there are many contradictions in this matter. There are some links and there are some gaps. There are implications and innuendos and inferences. And as far as the elements of evidence are concerned, one column of evidence could be added up to indicate a possible involvement in a criminal action on the part of the defendant Wit. As far as the other side is concerned, the elements can be added up to indicate a helping factor.

As far as the corporation is concerned, the corporation acts through its agents. Therefore, it is obviously determined by those who are identified as its agents.

To make a finding that Albert Wittlin—I said Wit because that is my own code for abbreviating names in this matter—Albert Wittlin was criminally involved requires proof beyond a reasonable doubt. And this Court does not find such.

Accordingly, the judgment of the Court is that the defendant Michael Pascucci is indebted to the plaintiff Lazarus in the amount

of $28,000, which is reckoned this way, $25,000 that he has admitted that he received and that he spent and of the $9,500 other.

It seems to the Court that $9,500 is a high commission on a $25,000 sale. And I simply used the formula of taking one-third of it and adding that to the amount that is owed; making a total of $28,000.

As to the defendant Albert Wittlin, he is dismissed. And as to the defendant Grand Sport Center, it is dismissed.

MR. BROOKS [Defense counsel]: Your Honor, do you make a finding with respect to the allegation for the money spent for the slip on Mr. Lazarus' and Miss Cozzo's own testimony?

THE COURT: No. I cannot, because of the fact that this is something I say has got to be proved beyond a reasonable doubt. There is a great deal of conversation about it. I am simply not able to find a positive conclusion on one side or the other.

What I have to do is, as I say, to make what amounts to a criminal finding."

It is from this judgment that plaintiff appeals.

OPINION

Plaintiff first contends that the trial court applied an incorrect burden of proof, making him prove his case "beyond a reasonable doubt" instead of the proper "by a preponderance of the evidence" standard. Because we agree and reverse and remand on this point, it is unnecessary to consider the other points raised on appeal.

In his second amended complaint, plaintiff sought recovery against Grand Sports on a principal-agency theory, alleging that Grand Sports, as his agent, concealed the true circumstances of ownership upon the sale of the boat to Nilles and thereby damaged him. Wittlin's alleged liability was premised on his being Grand Sports' agent and employee during the sale to Nilles and either executing the bill of sale to Nilles or ratifying Pascucci's execution of the instrument. Recovery from Pascucci was based on his being an agent or employee of Grand Sports and executing the bill of sale to Nilles while concealing the prior transfer to Usen. Grand Sports and Wittlin argue that Pascucci acted as Lazarus' special agent in the sale to Nilles and not as an agent of Grand Sports or Wittlin.

■■ The liability of Grand Sports or Wittlin would require that the principal-agent relationships alleged in the pleadings be established. The existence of an agency relationship is a question of fact (*Penrod v. Merrill Lynch* (1979), 68 Ill. App. 3d 75, 385 N.E.2d 376; *Krug v. Machen* (1974), 24 Ill. App. 3d 526, 321 N.E.2d 85) to be decided by the court or jury. (*Allstate Insurance Co. v. National Tea Co.* (1975), 25 Ill. App. 3d 449, 323 N.E.2d 521.) The party alleging an agency relationship has the burden of

proving it by a preponderance of the evidence. (*Mayfair Construction Co. v. Security Insurance Co.* (1977), 51 Ill. App. 3d 588, 366 N.E.2d 1020; *Mills v. State National Bank* (1975), 28 Ill. App. 3d 830, 329 N.E.2d 255.) As the trial court noted, there are two "columns" of evidence in the instant case. There is evidence of Pascucci's role as Grand Sports' agent during the sale of the boat to Nilles and the transfer to Usen. There is also evidence of Wittlin's ratification of Pascucci's authority to deal with the boat. On the other hand, there is evidence that Pascucci acted solely on Lazarus' behalf and that neither Wittlin nor Grand Sports were involved in the sale to Nilles. The evidence, however, is not absolutely clear either way. While we would normally presume from a silent record that the trial court applied the proper standard of proof, the repeated references to "proof beyond a reasonable doubt" leads us to believe that the trial court may have applied the greater burden of proof to the evidence and found against Lazarus.

■■ This conclusion is buttressed by the court's statements regarding Wittlin's possible criminal liability. It is unclear what crime the court was referring to, whether it was bribery or theft concerning the slip payments or theft concerning the boat generally. The court clearly stated that proof of criminal activity requires proof beyond a reasonable doubt. This is not true in a civil case. When a violation of the law is relied on in a civil action, the violation, like every other fact in issue, need only be proved by a preponderance of the evidence. (*Mineika v. Union National Bank* (1975), 30 Ill. App. 3d 277, 332 N.E.2d 504; *Drezner v. Civil Service Com.* (1947), 398 Ill. 219, 75 N.E.2d 303.) Appellees contend that the reference to criminal activity by the trial court involved only the slip payments, and that plaintiff has conceded in his brief that the slip payments were the subject of the court's comments. This is merely the plaintiff's idea of what the court meant by its references to criminal acts. The trial court did not so limit its findings, and we feel it is improper to speculate on what the court had in mind.

■■ There are facts in this case which indicate possible liability on the part of both Grand Sports and Wittlin. Although a presumption of regularity of the proceedings in the trial court exists, the presumption can be overcome by a showing that an error has been committed. (*Witvoet v. Berry* (1977), 48 Ill. App. 3d 485, 359 N.E.2d 1117.) Because it affirmatively appears on the record that the trial court may have applied the wrong standard of proof to the agency issue and did in fact apply the incorrect standard to the proof of the criminal acts, we must reverse and remand for a new trial. Since the existence of agency and the possible criminal acts are issues of fact, the resolution of which depends largely upon the weight of the evidence and credibility of witnesses, only a new trial applying the correct "preponderance of the evidence" standard to

the evidence can correct the possible error at trial. Because Pascucci has not appealed the judgment against him, we do not disturb the trial court's findings as to his liability.

Accordingly, the judgment of the trial court as to Wittlin and Grand Sports is reversed, and the cause remanded for a new trial.

Reversed and remanded.

LORENZ and WILSON, JJ., concur.