Tate *v.* Field.

JOSEPH TATE, complainant and respondent,

*v.*

FRANK S. FIELD, MARY C. HAYNES and WILLIAM S. WHITE, defendants and appellants.

[Filed March 14th, 1899.]

When a mortgagor in possession has committed waste upon the mortgaged estate, by the removal of a building erected thereon, the measure of the mortgagee's loss is not the value of the building after severance, but the diminution in the value of his security.

Tate *v.* Field.

On appeal from a decree advised by Vice-Chancellor Pitney. whose opinion is reported in *12 Dick. Ch. Rep. 53.*

*Mr. Francis J. Swayze,* for the appellants.

*Mr. Samuel J. MacDonald,* for the respondent.

The opinion of the court was delivered by

GUMMERE, J.

The bill in this case was filed to foreclose a mortgage given by a corporation, the Powerville Felt Roofing Company, to the complainant, on property near Chatham, in Morris county. It alleges that the mortgaged premises were conveyed by Goodell, receiver of the Powerville Felt Roofing Company, to Gerrit Smith, who acted as the agent or attorney of Field, Haynes and White; that Smith, Field, Haynes and White tore down a building which had been erected on the mortgaged premises, and removed it to premises owned by them near Boonton, and erected it thereon. It then charges that the removal of the building " very greatly impaired the security of your orator's said mortgage," and prays, in addition to the usual prayers of a foreclosure bill, that Smith, Field, Haynes and White may be decreed to return and restore the building to the mortgaged premises in the same condition as it was at the time of its removal, or to pay to the complainant the deficiency on the sale, " or that in default of such payment the said building be sold to pay the same."

There was a decree of foreclosure and sale, together with an adjudication that the complainant was entitled to compensation for the waste set out in the bill of complaint. On the hearing, had for the purpose of ascertaining what sum the defendants should pay by reason of the waste, the vice-chancellor applied the rule which governs as between tenant for life and remainderman where waste has been committed by the former, and decreed that the appellants should pay to the respondent the full value to the defendants of the building removed—which he ascertained to be $400—with interest from the date of its removal.

We do not think that the right principle was applied by

the vice-chancellor in ascertaining the extent of the defendant's liability.

The position of a mortgagor in possession of the mortgaged estate bears no analogy to that of tenant for life. The mortgagor in possession is, in equity, the owner of the estate, and may exercise all acts of ownership, even to the committing of waste, provided he does not diminish the security and render it insufficient. *Kerr Inj.* § *81 ; Coggill* v. *Millburn Land Co., 10 C. E. Gr. 90.*

And not only is there no analogy between the position of a mortgagor in possession and that of a tenant for life, with reference to waste committed, but the rule for the admeasurement of damages is different. In the case of the former the measure of damages is the diminution in the value of the mortgage security. *Jackson* ads. *Turrell, 10 Vr. 329 ; Schalk* v. *Kingsley, 13 Vr. 32.*

But notwithstanding that an erroneous principle was adopted, in ascertaining the amount to be paid by the defendants for the waste committed, we think that the sum which, by the decree, they are ordered to pay, is not excessive. The proofs on the part of the complainant were to the effect that, under favorable circumstances, the materials in the building might be worth, to a contractor or builder, after severance from the land, half of its original cost, viz., $360 ; and it was largely upon this testimony that the vice-chancellor based his finding of the amount for which the defendants were liable. Witnesses were called by the defendants to disprove the accuracy of this estimate, and they place the value of the materials in the building at a less sum. An examination of all the testimony on this subject, however, does not satisfy us that the conclusion of the vice-chancellor, in accepting as accurate the valuation of $360, was erroneous. Taking the materials in the building after its removal to have been worth the sum named, it may fairly be assumed that the value of the mortgage security was diminished by more than that amount by the waste ; for the total value of the mortgaged premises before the waste was committed was not merely the value of the land without the building plus the value of the materials in the building. It will not be denied that, as a

general rule, a building adds to the worth of the premises upon which it is erected more than the amount which could be obtained for the materials in it after it was torn down; and we find nothing in the facts of this case which differentiates this particular property from other improved real estate, so far as elements of value are concerned. Assuming the worth of the materials, after severance from the realty, to be as determined by the vice-chancellor, we think that on all the facts we are justified in concluding that, by the removal of the building, the value of the mortgage security was diminished at least to the extent of $400.

The decree below should be affirmed, but without costs to either party.

*For affirmance*—The Chief-Justice, Depue, Van Syckel, Dixon, Garrison, Lippincott, Gummere, Ludlow, Collins, Adams, Bogert, Hendrickson, Nixon, Vredenburgh—14.

*For reversal*—None.