JENNIE WILLIAMS COTTLE, Plaintiff, *v.* REUBEN W. WRIGHT and Others, Defendants.

Supreme Court, Chautauqua County, June 10, 1931.

*Edmund P. Cottle*, for the plaintiff.

*Nugent & Heffernan*, for the defendant Reuben W. Wright.

HINKLEY, J.  This action is brought to foreclose a mortgage for $3,000 given upon a farm of about 225 acres in the town of Stockton, Chautauqua county, N. Y.  The bond and mortgage were given on June 9, 1891, for a period of two years, with interest at six per cent per annum, payable semi-annually.  The plaintiff, on December 22, 1919, became the owner and holder of the bond and mortgage. On November 7, 1925, defendant Reuben W. Wright took title to the farm subject to the mortgage which he did *not* assume and agree to pay.

There was no question as to the default in the payment of the mortgage and the court ascertained and determined the amount due upon that default.

There was but one issue raised by the pleadings and presented upon the trial and it apparently has not before been squarely presented to the courts of this State.  Is the plaintiff entitled to a judgment against the defendant Reuben W. Wright for waste in this action for foreclosure of the mortgage and if so, the amount of that judgment?

The testimony clearly established that Wright took title to the farm as a mere speculation.  During his ownership the farm remained idle and unproductive.  Shortly after taking title he sold and permitted to be cut and taken away practically all of the valuable timber on the farm.  According to his own testimony, he received for that lumber $1,650 in cash.  Instead of taking ordinary care of the farm, he allowed it to run down.  Fences were left unrepaired and, except for the dwelling house, the premises deteriorated as any other abandoned farm.  Wright claimed upon the trial that he provided a caretaker who lived on the farm with his dogs.  Plaintiff's attorney, who was in charge of the mortgage, heard in Buffalo, about seventy miles away, that the barn had been stolen from the farm.  He communicated with Wright who informed the caretaker of the theft.  How the thieves purloined the barn without the ken of the caretaker or his dogs is readily explained. Washington Irving records a similar instance for when Rip Van Winkle went to sleep his dog Wolf wandered away to the village without him.

One who saw the witnesses and heard their testimony upon the trial must be convinced that the defendant Wright deliberately sold the timber, not in good faith nor in the ordinary pursuit of husbandry, but in order to willfully, knowingly and unlawfully enrich himself at the expense of the plaintiff herein.  Having

impaired the security of plaintiff, he sought to be relieved of liability by repeated attempts to force the plaintiff to accept a deed of the premises. Failing in that he has rested in the fancied security that he had not assumed the mortgage.

" So long as the mortgagor remains in possession and *does not commit* waste, he may lawfully dispose of the products of the land." (2 Jones Mort. [8th ed.] § 821, p. 111; *Fox* v. *Domino Lumber Co.,* 116 Misc. 567.)

" Waste is an improper destruction or material alteration or deterioration of the freehold, or of things forming an essential part of it, done or suffered by a person rightfully in possession as tenant, or having a partial estate like a mortgagor. It is not waste for a mortgagor of agricultural lands to sell timber, remove or change fixtures, if done in good faith, in the usual course of good husbandry, and before foreclosure is begun, or default has occurred upon the mortgage." (*Hamilton* v. *Austin,* 36 Hun, 138, 143.)

The foundation for an action for waste by a mortgagee is the impairment of the security of the mortgage with knowledge of the lien. (*Ogden Lumber Company* v. *Busse,* 92 App. Div. 143; *Tate* v. *Field,* 57 N. J. Eq. 632; 42 Atl. 742.)

That an action for waste would lie in favor of plaintiff mortgagee against the defendant Wright is clearly established by authority in this State. (*Van Pelt* v. *McGraw,* 4 N. Y. 110; *Morgan* v. *Waters,* 122 App. Div. 340.)

The bringing of a separate action at law by a mortgagee for waste presents two difficulties. The basis of his action limits him to damages representing the impairment of his security at the time of the commission of the waste. Yet he is further limited in that he cannot receive more than his mortgage debt and expenses which can only be determined upon a sale in foreclosure. On the other hand, the amount realized upon the foreclosure sale in no way determines the impairment of his security at the time of the commission of the waste for later intervening extraneous conditions such as insolvency of mortgagor or market depression may materially affect the foreclosure sale price. (*Ferraro* v. *Marrillard Builders, Inc.,* 227 App. Div. 448, 451; *Ogden Lumber Company* v. *Busse,* 92 id. 143.)

These difficulties can be readily met, however, in a foreclosure action, by a personal judgment against the owner of the equity who has committed waste. Such judgment may be for a definite amount to be applied in whole upon any deficiency resulting upon the foreclosure sale or reduced to conform to such deficiency.

The parties herein have submitted themselves and the issue of waste without objection to this court sitting in equity. The

court having acquired jurisdiction of the parties and the subject of the action, is authorized and required to finally determine not only the main issue but such issues as are incident thereto.

This is in harmony with the control which the court may exercise in a foreclosure action by affording a mortgagee at any time during the pendency of the action injunctive relief to prevent waste. That power remains with the court after judgment and pending confirmation in order that the mortgagor may not take away from the control of the court, the very thing upon which it has adjudicated. (2 Jones Mort. [8th ed.] § 846; *Mutual Life Insurance Co.* v. *Bigler*, 79 N. Y. 568.)

" In England, and in this State prior to the Revised Statutes, the Court of Chancery, in an action to foreclose a mortgage, was not supposed to have jurisdiction to render a personal judgment against the mortgagor upon his bond or covenant to pay the mortgage debt, and such a judgment could only be obtained by an action at law. * * * This was an exception to the general rule, that where a court of equity obtains jurisdiction of an action it will retain it and administer full relief, both legal and equitable, so far as it pertains to the same transaction or the same subject-matter. * * * We think we are justified in holding that that rule has been entirely swept away and that the general rule in equity practice above referred to, except as it is modified by the provisions of the Code, governs foreclosure as other equitable actions." (*Frank* v. *Davis*, 135 N. Y. 275.)

" It has always been a well settled and familiar rule that when a court of equity gains jurisdiction of a cause before it for one purpose, it may retain it generally. To do complete justice between the parties a court of equity will further retain the cause, for the purpose of ascertaining and awarding the apparent damages, as something which is incidental to the main relief sought." (*Lynch*, v. *M. E. R. Co.*, 129 N. Y. 274, 279; *Russell H. & I. M. Co.* v. *Utica, D. F. & T. Co.*, 195 id. 54.)

" Allowance for waste committed by mortgagor. When that question is litigated, the decree may include an allowance to the mortgagee for damages due to waste committed by the mortgagor which depreciates the security so that a deficiency results by reason of such depreciation." (3 Jones Mort. [8th ed.] § 2024.)

" A mortgagee in a bill to foreclose the mortgage may litigate the question of the liability of the receiver of the insolvent mortgagor for waste committed by him by the removal of fixtures from the premises and thereby depreciating the security." (*Prudential Insurance Co.* v. *Guild*, 64 Atl. 694 [headnote].)

" Equity having jurisdiction of a bill for foreclosure, may award

damages for waste committed by purchasers from the mortgagor, whereby the security was rendered inadequate, such purchasers being nonresidents, who could only be sued at law in a foreign state." (*Tate* v. *Field*, 56 N. J. Eq. 35; 37 Atl. 440 [headnote].)

Had the defendant Wright removed the dwelling house from the farm and sold it for a definite price, that sale price would represent a minimum impairment of the security of the mortgage. The cash sum of $1,650, received by the defendant Wright for the unlawful, deliberate and willful sale and delivery of the timber, represents the minimum of the impairment of plaintiff's security at the time of the commission of such waste.

Judgment of foreclosure and sale may be entered herein, which shall include a personal judgment in favor of the plaintiff against the defendant Reuben W. Wright for the sum of $1,650. Such personal judgment shall be reduced to conform to the amount of the deficiency arising upon such foreclosure sale in the event that such deficiency is less than the said sum of $1,650.