*In re* APPLICATION OF LOUIS F. BUSSE *et al.* (Robert A. Hutchings *et al.*, Plaintiffs-Appellees, *v.* Daniel P. Sternberg *et al.*, Defendants-Appellants).

First District (5th Division)   No. 82—1661

Opinion filed May 11, 1984.

David I. Grund and Hyman Abrams, both of Chicago, for appellants.

Morton C. Kaplan, of Chicago, for appellees.

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Defendants, Daniel P. Sternberg and James F. Schmidt,[1] appeal from an order awarding plaintiffs judgments for compensatory and punitive damages upon a finding that defendants' wilful substitution of a note and trust deed with different dates of payment and an altered subordination clause caused loss of plaintiffs' senior security interest in the subject property. Defendants contend that: (1) plaintiffs failed to prove fraud by failure to prove the essential element of actual damages; and (2) because of the lack of proof of actual damages, the court erred in awarding punitive damages. We affirm.

The pertinent facts are as follows. Plaintiffs, Eunice S. Hutchings and Robert A. Hutchings, were the owners of a two-acre parcel of real estate, title to which was registered in the office of the registrar of titles of Cook County. On September 30, 1978, plaintiffs entered into a contract for the sale of the property to defendant Schmidt for the sum of $225,000. The contract provided for a cash payment upon closing of $65,000, and the balance of $160,000 "as set forth in the note of the purchaser (grantee) *** secured by a part-purchase mortgage (trust deed), the latter instrument and the note to be in the form hereto attached." Attached were the note and trust deed completed except for the signatures of the La Salle National Bank, as trustee under Trust No. 100077 (the maker and grantor, respectively), and the identification by Chicago Title & Trust Company, as trustee under the trust deed. The note attached provided for the payment of the balance of $160,000 in installments of $53,333 plus interest of 8% per annum on May 1, 1980, and May 1, 1981, and the balance on January 10, 1982. The attached trust deed contained a typewritten paragraph 11 which provided:

> "11. The holder of the Installment Note of even date herewith which is secured by this Trust Deed agrees by the receipt of such Installment Note that such Trust Deed shall be junior and subordinate to subsequent notes and mortgages or trust deeds securing such notes which evidence either 'construction' or 'permanent' loans on the real estate. The holder further

---

[1]Glenview State Bank and the Registrar of [Torrens] Titles of Cook County, Illinois, also named defendants, are not parties to this appeal.

agrees to execute and deliver such further documentation as the holder of subsequent notes may require to evidence the subordination required hereunder."

Defendant Sternberg, an attorney and a partner with defendant Schmidt in a proposed development of the property, prepared the documents attached to the contract. The closing of the contract was scheduled for May 2, 1979, at 2:30 p.m. at the La Salle National Bank. Because of an inability to reschedule the time, plaintiffs' attorney, Ronald Hankin, arranged for a preclosing with Sternberg in the latter's office attended only by the two attorneys. Sternberg indicated that the note and mortgage had not yet been identified by Chicago Title & Trust Company and that he would undertake to have the document identified and register the trust deed with the registrar of titles. Plaintiffs' attorney tendered the necessary documents for transfer of title to La Salle National Bank on behalf of plaintiffs as sellers. Sternberg acknowledged receipt on a closing statement and agreed to deliver the sellers "following filing" a check for $58,430.92 and $268; the original note to Hutchings in amount of $160,000; trust deed with copy of filing receipt; and a signed closing statement. Neither plaintiffs nor their attorney attended the further closing, execution of documents, filing of documents in the registrar's office, or completion of the transaction had later on May 2, 1979.

Defendants Sternberg and Schmidt prepared a note and trust deed and caused it to be executed by La Salle National Bank and to be identified by Chicago Title & Trust Company, which note and trust deed were substituted for and differed from those attached and made a part of plaintiffs' contract. The dates of the payments due May 1, 1980, and May 1, 1981, were changed to October 1, 1980, and October 1, 1981, and the typewritten paragraph 11 in the trust deed as hereinbefore set forth was changed by adding the following:

"*** and acknowledges that the lien created hereby is specifically subordinated to the lien by the trust deed dated April 26, 1979, securing a note of even date in the principal amount of $225,000, such trust deed being filed with the Cook County registrar of titles as Document No. _____."

Thereafter, on May 2, 1979, Sternberg caused to be registered with the registrar of titles the deed of conveyance from plaintiffs to effect title in La Salle National Bank, as trustee under Trust No. 100077, under which trust defendants are the beneficial owners. Defendant Sternberg then also registered as Document No. 3089317 a mortgage trust deed dated April 20, 1979, from La Salle to Glenview State Bank, conveying plaintiffs' parcel and an adjoining parcel to se-

cure a mortgage loan of $225,000. The loan was granted for the purpose of providing the initial cash payment of $65,000 for acquiring plaintiffs' parcel and except for $10,000 applied for working capital, the balance was for the purchase of the adjoining parcel. Defendant Sternberg, concurrently with the foregoing filing, further registered the mortgage trust deed from La Salle to Chicago Title & Trust Company as Document No. 3089318, in which the payment dates had been altered and language added expressly subordinating plaintiffs' security interest to that of the Glenview State Bank mortgage trust deed.

Plaintiffs commenced this action by filing a petition requesting: (1) that an order be entered directing the register of titles to correct the payment dates in plaintiffs' trust deed which had been registered or to strike the trust deed and permit the filing of a proper trust deed; (2) that an order be entered that the mortgage to Glenview is subordinate to the trust deed which secures plaintiffs' interest; and (3) damages and attorney fees. Plaintiffs thereafter filed a second amended complaint alleging, *inter alia*, that the fraudulent acts of defendants had defeated the rights of plaintiffs in their security interest and praying for injunctive and other relief.

After a bench trial at which evidence was presented, the court found that the note and trust deed which subordinated plaintiffs' security interest to that of Glenview had been substituted for the note and trust deed as provided in the contract and as originally submitted by attorney Hankin, which was to provide plaintiffs with a superior security interest; further, that as a result defendants obtained a mortgage loan of $225,000 from Glenview by mortgaging plaintiffs' land and placing their trust deed in a junior security position. The court on June 21, 1982, entered an order: (1) granting judgment for plaintiffs against defendants for $160,000 with interest from the closing date of May 2, 1979, until paid, for obtaining the property of the plaintiffs by actual fraud; (2) ordered that the subject property be held in constructive trust for plaintiffs until the $160,000 is paid; and (3) granting judgment for plaintiffs and against defendants for punitive and exemplary damages of $50,000 for the actual fraud committed by them.[2]

Plaintiffs initially filed an appeal from the prior judgment entered June 8, 1982, which dismissed Glenview State Bank, finding in its favor and granting priority to its mortgage. Defendants subsequently filed a notice of appeal from the judgments entered June 21, 1982, against them in favor of plaintiffs for compensatory damages of

---

[2]The court also awarded plaintiffs a judgment for $3,316 against the registrar of titles of Cook County, but no appeal has been taken from that portion of the order.

$160,000 and for punitive and exemplary damages of $50,000. All of the parties thereafter entered into an agreement whereby plaintiffs satisfied the judgment for $160,000 and interest and released their trust deed and the constructive trust on the subject property, and defendants agreed to dismiss their appeal from the order of June 21, 1982, excepting the judgment for punitive and exemplary damages. On October 22, 1982, pursuant to motion, this court dismissed the entire appeal. Thereafter, on defendants' motion, the dismissal was partially vacated to reinstate defendants' appeal limited, in accordance with the agreement, to the judgment in favor of plaintiffs for punitive and exemplary damages of $50,000.

OPINION

Defendants' appeal is limited to the judgment entered against them for punitive and exemplary damages. They contend that plaintiffs failed to prove actual damages to sustain an action for fraud and that therefore the trial court erred in awarding punitive and exemplary damages.

"Punitive damages" and "exemplary damages" (as well as "vindictive damages") are synonymous. (*Madison v. Wigal* (1958), 18 Ill. App. 2d 564, 153 N.E.2d 90.) In general, punitive damages may not be awarded in the absence of compensatory damages. (*Lowe v. Norfolk & Western Ry. Co.* (1981), 96 Ill. App. 3d 637, 421 N.E.2d 971.) Punitive or exemplary damages are in addition to compensatory damages and cannot be allowed unless actual damage is shown. *Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 393 N.E.2d 1223; *Tonchen v. All-Steel Equipment, Inc.* (1973), 13 Ill. App. 3d 454, 300 N.E.2d 616.

The trial court order, *inter alia*, entered a judgment in favor of plaintiffs and against defendants for compensatory damages of $160,000 with interest computed from May 2, 1979, until paid, "for obtaining the property of the plaintiffs by actual fraud." Nonetheless, defendants contend that there was no proof of damage to sustain an action in fraud.

Defendants' basic premise is well established—that proof of damage resulting from the alleged fraud or deceit is an essential element in an action for fraud or deceit. (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286, 402 N.E.2d 599; *Struve v. Tatge* (1918), 285 Ill. 103, 109, 120 N.E. 549; *Yates v. Cummings* (1972), 4 Ill. App. 3d 899, 903, 282 N.E.2d 261; *Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 213 N.E.2d 89.) However, while damages may not be predicated on mere speculation, hypothesis, conjecture or whim, absolute cer-

tainty concerning the amount of damage is not necessary to justify a recovery where the existence of damage is established; the evidence need only tend to show a basis for the computation of damages with a fair degree of probability. (*Posner v. Davis* (1979), 76 Ill. App. 3d 638, 645, 395 N.E.2d 133; *De Koven Drug Co. v. First National Bank* (1975), 27 Ill. App. 3d 798, 802, 327 N.E.2d 378.) A benefit-of-the-bargain formula for damages is proper in an action for fraud. (*Four "S" Alliance, Inc. v. American National Bank & Trust Co.* (1982), 104 Ill. App. 3d 636, 640, 432 N.E.2d 1213; *Posner v. Davis* (1979), 76 Ill. App. 3d 638, 395 N.E.2d 133.) Moreover, a presumption of at least nominal damages follows from proof of a legal wrong (*Brewer v. Custom Builders Corp.* (1976), 42 Ill. App. 3d 668, 356 N.E.2d 565; *Crosby v. City of Chicago* (1973), 11 Ill. App. 3d 625, 629, 298 N.E.2d 719; *Wertheimer v. Glanz* (1934), 277 Ill. App. 389), and a liability for nominal damages is sufficient to sustain a cause of action. See *Crosby v. City of Chicago* (1973), 11 Ill. App. 3d 625, 298 N.E.2d 719; see also 22 Am. Jur. 2d *Damages* secs. 6, 10 (1965).

■ Defendants initially argue that there was no evidence whatsoever concerning the value of plaintiffs' security interest as it stood subsequent to defendants' unauthorized actions, nor that plaintiffs' security position had been lost, "albeit subordinated to the interest of another lender." We disagree.

The record sets forth the testimony of the parties and their attorneys and numerous exhibits received in evidence. The exhibits include the real estate contract between plaintiffs and defendants for the subject property, copies of the note and purchase-money mortgage as specified in the contract and subsequently displaced as originals, the subordinated note and purchase-money mortgage as filed for record, the real estate closing statement, the Glenview State Bank mortgage of $225,000 to which plaintiffs' purchase-money mortgage was subordinated and other pertinent records and correspondence. Title to the subject property was registered under the land-title system commonly known as a Torrens system (Ill. Rev. Stat. 1983, ch. 30, par. 45 *et seq.*). A trust deed in the nature of a mortgage, as in the instant case, is deemed to be a mortgage and subject to the same rules as a mortgage. Ill. Rev. Stat. 1983, ch. 30, par. 105.

The evidence clearly shows that in accordance with the contract, plaintiffs were entitled to receive a first and prior "part-purchase-money mortgage (trust deed)" upon the subject property, as thereto attached, to secure payment to them of the note for the $160,000 balance of the agreed contract price of $225,000. The note and mortgage were executed by La Salle National Bank, as trustee and not person-

ally, and no personal liability was assumed thereon by anyone.

A mortgage is an interest in land created by a written instrument providing security for the performance of a duty or the payment of a debt. (Black's Law Dictionary 911 (5th ed. 1979).) A purchase-money mortgage is given concurrently with a conveyance of land, by the vendee to the vendor, on the same land, to secure the unpaid balance of the purchase price. (*Wermes v. McCowan* (1936), 286 Ill. App. 381, 3 N.E.2d 720.) The purchase-money mortgage usually takes precedence over all other and subsequent claims and liens of every kind against the mortgagor to the extent of the land purchased. (27 Ill. L. & Prac. *Mortgages* sec. 98 (1956).) It follows that a mortgagor may not commit acts impairing the sufficiency of the mortgagee's security regardless of the mortgagor's solvency or insolvency. (55 am. Jur. 2d *Mortgages* 298 (1971).) Here, defendants' solvency is irrelevant in that they had assumed no personal liability on the obligation.

■ Plaintiffs' security interest consisted solely and only of the real estate contemporaneously conveyed by plaintiffs to defendants upon the mutually agreed price of $225,000. Generally, a recent sale of the subject property is the best evidence of value. (*Ryan v. State* (1972), 39 App. Div. 2d 830, 333 N.Y.S. 2d 158.) The finder of fact may consider the purchase price as the basis for valuation as well as any other evidence that is material to the issue of damages. (See *Mineika v. Union National Bank* (1975), 30 Ill. App. 3d 277, 283, 332 N.E.2d 504; *Behrens v. W. S. Bills & Sons, Inc.* (1972), 5 Ill. App. 3d 567, 283 N.E.2d 1.) The price actually paid at a *bona fide* sale for property, the value of which is in issue, is admissible to prove the value of such property, and in the absence of other testimony, such proof is sufficient evidence of its value. (*Johnson v. Canfield-Swigart Co.* (1920), 292 Ill. 101, 126 N.E. 608.) A price paid in a recent sale is considered most important in determining the present value of property. (*City of Chicago v. Bank of Ravenswood* (1981), 93 Ill. App. 3d 52, 416 N.E.2d 1115.) Moreover, a contemporaneous sale, as in the instant case, is not only relevant, but is practically conclusive on the issue of value. (See *People ex rel. Korzen v. Belt Ry. Co.* (1967), 37 Ill. 2d 158, 161, 226 N.E.2d 265.) The evidence was clearly ample to support a finding that the security interest had a value in the amount of $225,000.

Defendants concede that they caused plaintiffs' security interest to be subordinated to the $225,000 mortgage of Glenview State Bank. It has long been established that a mortgagor has no right to do any act which would impair the security of the mortgage. (*Dorr v. Dudderar* (1978), 88 Ill. 107; *McGahan v. Bank of Rondout* (1895), 156

U.S. 218, 235, 39 L. Ed. 403, 408, 15 S. Ct. 347, 352.) Voluntary action impairing the sufficiency of the security is actionable by a mortgagee as a positive affirmative wrong injurious to the mortgagee. *Citizens National Bank v. Joseph Kesl & Sons Co.* (1941), 378 Ill. 428, 435, 38 N.E.2d 734; *Camden Trust Co. v. Handle* (1942), 132 N.J. Eq. 97, 26 A.2d 865.

■ A mortgagee has a right to his security unimpaired and therefore may maintain an action before breach of condition to recover damages in the nature of waste against the mortgagor or a third person for substantial damages done by him to the mortgaged property, even though in its damaged condition it is of sufficient value to satisfy the mortgage; and it makes no difference whether the debtor is solvent or insolvent at the time complained of. (*Hummer v. R. C. Huffman Construction Co.* (7th Cir. 1933), 63 F.2d 372, 374-75.) Here, plaintiffs' right to have their mortgage security unimpaired was violated by the wilful and deliberate acts of defendants which subordinated the security to a prior and superior encumbrance. The essence of this action is the wrongful and tortious impairment of plaintiffs' security interest to which they were entitled under the purchase-money mortgage.

Although the Glenview mortgage was then in the process of foreclosure in a related case, there is no reason or authority which would make a foreclosure or a foreclosure and sale on a deficiency judgment conditions precedent to maintaining such action, particularly as here, where the acts were deliberately committed by defendants who had full knowledge of plaintiffs' right to a first and prior lien and must have known that their action would impair the security of that very lien. *Syracuse Savings Bank v. Onondaga Silk Co.* (Sup. Ct. 1939), 171 Misc. 993, 14 N.Y.S.2d 356; *Hummer v. R. C. Huffman Construction Co.* (7th Cir. 1973), 63 F.2d 372.

■ Under the facts herein, plaintiffs' security interest of a $225,000 value was wrongfully subordinated to the $225,000 security interest of another lender. It is undeniable that plaintiffs' security has thereby been full preempted and substantially impaired—in fact made unavailable—leaving no security to assure payment of the purchase-price balance. As a result, plaintiffs did not receive the security interest for which they had bargained and were damaged by lending defendants the purchase-money balance on the basis of inadequate security. (See *American Savings & Loan Association v. Leeds* (1968), 68 Cal. 2d 611, 440 P.2d 933, 68 Cal. Rptr. 453.) In such circumstances damages are measured by the amount of the injury to the security caused by the mortgagor's act, but are limited to the amount due un-

der the mortgage. (*Cottle v. Wright* (Sup. Ct. 1931), 140 Misc. 373, 251 N.Y.S. 699.) Likewise, where a loan on real estate security is induced by fraudulent representations as to the value of the security, the measure of damages is the amount loaned with interest. *Horne v. Walton* (1886), 117 Ill. 141, 7 N.E. 103; *Horne v. Walton* (1886), 117 Ill. 130, 7 N.E. 100; see also *Hahl v. Brooks* (1904), 213 Ill. 134, 72 N.E. 727.

■ Defendants further argue that they introduced unrebutted testimony of improvements which enhanced the value of the property and which in turn made the plaintiffs' position more secure; further, that the evidence disclosed "that another and adjacent parcel of land was being developed in conjunction with the plaintiffs' land and the defendants invested approximately $110,000 to improve the subject property." A review of the record reveals that the only testimony was that of defendant Schmidt that the sum was "invested" on an adjacent parcel and the subject property as expenditures which fall in the general categories of architectural plans, specifications, civil engineering drawings, landscaping, soil testing and soil balancing. He explained that soil balancing was the removal of any excessive amount of top soil and the grading of the property. No further evidence appears to support the expenditure or to show or allocate any improvements which would increase or enhance the value of the subject property at the time of defendants' unauthorized actions. We find this argument as to enhancement without merit. Furthermore, even if *arguendo* enhancement of the security interest to the extent of $110,000 had been established, the security interest would still be subject to the Glenview State Bank mortgage and therefore be contrary to the terms of the contract; moreover, unquestionably, the security would nevertheless be grossly inadequate and insufficient to assure payment of the $160,000 balance due plaintiffs.

■ Defendants next argue that there was no evidence of damage sustained by plaintiffs as a result of the change of the payment dates in the note and trust deed. A change in the language of a document, whether by interlineation or otherwise, which if enforced would have a legal effect different from the original language, is a material change. (*Citizens National Bank v. Morman* (1979), 78 Ill. App. 3d 1037, 398 N.E.2d 49; see also *Ruwaldt v. W. C. McBride, Inc.* (1944), 388 Ill. 285, 293, 57 N.E.2d 863.) The contract of the parties specified certain dates for payments and the unauthorized change postponing such dates amounted to a fraud against the plaintiffs as the nonconsenting parties thereto. Plaintiffs' rights were violated and they were again deprived of the "benefit-of-their-bargain." The postponement of

payment dates clearly deprived the plaintiffs of the use of the monies which defendants were obligated to pay and which plaintiffs were legally entitled to receive. The deprivation of the payment and the use of the monies constituted a wrong and an injury to the damage of the plaintiffs.

We therefore conclude that plaintiffs produced sufficient proof of actual damages to sustain an action for fraud, and that the judgment for compensatory damages with interest from May 2, 1979, until paid, was not against the weight of the evidence. Actual damage having been established to sustain the action for fraud, the trial court did not err in awarding judgment for punitive and exemplary damages.

Accordingly, the judgment in favor of plaintiffs and against defendants for punitive and exemplary damages is affirmed.

Affirmed.

SULLIVAN and WILSON,* JJ., concur.

*This opinion was adopted as the opinion of the court prior to the death of Mr. Justice Wilson.